## Daniel H. Wheeler v. Daniel Wheeler's Estate.

*Cancellation of Advancement. Evidence. Witness.*

An advancement may be converted into an absolute gift by the intestate, by surrendering the evidence thereof to be cancelled.

Declarations of the intestate, that he had given his son something handsome, and if he did well for him, should give him more ; that he had held a writing against him, not a note, but had made him a present of it ; and that he had had claims against him, but had none then, in the absence of any proof that he had given his son anything else, or had held any other paper or claim against him,—are evidence tending to show the surrender by the intestate of a receipt evidencing an advancement to the son.

Such declarations, being made by a deceased person against his right and interest, are admissible against those who claim under him and in his right.

If a wife be directly interested in the event of a suit, although she be not a party to the record, her husband is not a competent witness in the cause.

The intestate's widow had testified that on a certain occasion, her husband surrendered a receipt to the plaintiff that evidenced an advancement to him, to be cancelled. To impeach her testimony, the defendant offered to show that subsequently, the intestate said certain things in the presence and hearing of his wife, tending to show that he had not surrendered the receipt. *Held*, not admissible.

APPEAL from a decree of the probate court for the district of Windsor, charging the plaintiff, a son of the intestate, with an advancement of $2,000 towards his share of his father's estate. Trial by jury, May term, 1873, BARRETT, J., presiding, and verdict for the plaintiff.

The issue raised and tried was, whether the intestate cancelled and annulled said advancement in his lifetime. The intestate

died on April 10, 1870, leaving Mary Wheeler, his widow, and Peter P. and Daniel H., his sons, and Mary Louisa Merrill, wife of Bailey W. Merrill, his daughter. On the 12th of February, 1848, the intestate gave the plaintiff $2,000 as an advancement, and took the plaintiff's receipt therefor of that date, whereby the plaintiff acknowledged the receipt thereof " towards my portion." The plaintiff introduced the deposition of the said Mary Wheeler, who testified that she knew her husband had a receipt against the plaintiff for $2,000, given for money as she supposed ; that her husband gave the receipt up to the plaintiff some fourteen or fifteen years before, at their house in Cavendish ; that the plaintiff read the receipt at the time, and she thought she did, and that plaintiff burned it by his father's direction. The defendant objected to the introduction of this deposition, on the ground of its incompetency to annul said advancement ; but the court overruled the objection, and admitted the deposition ; to which the defendant excepted. The plaintiff introduced one Chase as a witness, whose testimony tended to show that in 1859, the intestate told him that the plaintiff had been very kind to him ; that he depended on plaintiff to assist him ; that he had given plaintiff something handsome, and should give him more if he did well for him. The plaintiff also introduced one Dutton as a witness, whose testimony tended to show that when at work for the intestate in 1856, intestate told him he had advanced some money to his children and taken a writing for it, not a note ; that the plaintiff was a good-boy, and he depended on him for help ; that in 1868, intestate told witness he had made plaintiff a present of the writing he had against him, the one of which he spoke when witness was at work for him. The plaintiff also introduced one Bates and one Pratt as witnesses, whose testimony tended to show that the intestate told them in 1865 that he was going to do well by the plaintiff ; that he supposed he had a right to give plaintiff his farm ; that he once had claims against plaintiff, .but had none then. The plaintiff introduced other witnesses whose testimony tended to show similar statements of the intestate. The defendant objected to all the testimony thus introduced, but the court overruled the objection, and admitted the testimony ; to which

defendant excepted. Mrs. Merrill was a witness for the defendant. The defendant offered her husband as a witness, to whom the plaintiff objected, and the court excluded him ; to which the defendant excepted. For the purpose of impeaching the testimony of Mary Wheeler, the defendant offered to show by one Gilson, that the intestate told him in 1869, in presence and hearing of the said Mary, that he had given his two sons $2,000 each, towards their portion of his estate, and then held their receipts for the same, and that he intended his children should share equally in his property. The plaintiff objected to the testimony, and the court excluded it ; to which the defendant excepted.

*Luther Adams* and *Walker & Goddard*, for the defendant.

It is claimed in behalf of the estate, that no evidence was admissible on the part of the appellant, unless it tended to prove an intent of the intestate to change the character of the $2,000 from an advancement to an absolute gift, if it be conceded that the intestate had the legal right to do so, which may be questioned. After he had once made the advancement, he could not recall or avoid it. 2 Red. Wills, 908 ; *Gilbert* v. *Witherel,* 2 Sim. & S. 254 ; *Clark* v. *Warner*, 6 Conn. 360. The testimony of Chase, Bates, and Pratt, had no tendency to prove that the intestate intended to give up said receipt, and change the character of it from a qualified gift to an absolute one. The admission of such a class of testimony would be very apt to mislead a jury. 1 Greenl. Ev. § 448 ; *Hatch* v. *Straight*, 3 Conn. 34.

The testimony of Gilson was clearly admissible for the purpose for which it was offered. 2 Phil. Ev. 262 ; *Downer et al.* v. *Dana et al.* 19 Vt. 338 ; *Robinson* v. *Hutchinson and wife*, 31 Vt. 443 ; *Lindsay and wife* v. *Danville*, 45 Vt. 72.

Was not Merrill a competent witness ? His wife is not, technically, a party to this suit, although interested. *Lindsay* v. *Danville*, *supra* ; *Railway Co.* v. *Lincoln's Est.* 29 Vt. 206 ; *Robinson* v. *Hutchinson*, *supra* ; *Carpenter* v. *Moore et als.* 43 Vt. 392 ; Acts of 1863, p. 20.

*J. F. Dean* and *T. O. Seaver*, for the plaintiff.

The objection made to the deposition of Mary Wheeler, is, that being the widow of the intestate, she is an incompetent witness. This objection is not well founded. Her interest in the estate, or in this suit, works in her no disqualification as a witness. Gen. Sts. ch. 36, § 24. The fact of coverture that once existed between the deponent and the intestate, does not render the deposition inadmissible, inasmuch as it does not involve the disclosure of matters of confidence between husband and wife, nor of transactions affecting the character of the husband. 1 Greenl. Ev. § 338 ; *Williams* v. *Baldwin*, 7 Vt. 503 ; *Edgell* v. *Bennett*, 7 Vt. 534 ; *Smith* v. *Potter*, 27 Vt. 304 ; *Clements* v. *Marston*, 52 N. H. 31. The testimony of Chase, Dutton, and Pratt, was as to declarations and statements of the intestate made against his interest, and tended to support the plaintiff's claim. The whole current of authorities is in favor of the admission of this class of testimony, whether these declarations are to be regarded as those of a party to the suit, or of a third person. 1 Phil. Ev. 300, 402 ; Stark. Ev. 50, 64, 65 ; *Higham & wife* v. *Ridgway*, 10 East, 109.

The court properly excluded Merrill. *Carr* v. *Cornell*, 4 Vt. 116 ; Stark. Ev. 39, 138 ; 4 T. R. 678 ; *Crane* v. *Crane*, 33 Vt. 15, 20 ; *Carpenter, exr.* v. *Moore et als.* 43 Vt. 392. The testimony of Gilson was properly excluded. It had no tendency to impeach Mrs. Wheeler. It was an offer to prove the declarations of the intestate made in his interest, and with reference to the subject-matter of this suit, and is therefore inadmissible.

The opinion of the court was delivered by

Ross, J. The statute in relation to advancements (Gen. Sts. ch. 56, §§ 12, 13,) declares what shall be evidence of an advancement, and excludes all other evidence. This has become the settled doctrine in this state. *Newell* v. *Newell*, 13 Vt. 33 ; *Brown* v. *Brown*, 16 Vt. 197 ; *Heirs of Adams* v. *Adams*, 22 Vt. 51 ; *Weatherhead et al.* v. *Field, admr.* 26 Vt. 665. Hence, with us, the law presumes that property given by an intestate to an heir, is an absolute gift, unless the intention of the intestate to have it charged to said heir as an advancement, is evidenced in one of the four ways named in the statute. By the pleadings, it

is conceded that the intestate, Feb. 12, 1848, delivered to the appellant, his son, $2,000 by way of advancement towards the son's portion, and took from the son a receipt of that date, in which the son acknowledged he had received of the intestate that sum towards his portion. The $2,000 thus became properly evidenced as an advancement to be charged to the appellant in the distribution of the estate of his father. The issue made by the pleadings and tried by the court below, is, whether the father subsequently delivered this receipt to the appellant, and relinquished his right to have the $2,000 charged to the appellant as an advancement. This issue has been found by the jury in favor of the appellant. The only questions reserved are in regard to the competency of the evidence on which the jury have found this issue. All the appellant's evidence on which this issue was established in his favor, was admitted against the exception of the estate. The testimony of Mary Wheeler, in substance, was, that on a certain occasion the intestate surrendered the receipt to the appellant, and ordered it burned, and it was burned. It is not claimed that she was disqualified as a witness because she was the wife of the intestate at the time the transaction transpired to which she testified; nor that her testimony did not tend to establish the issue made by the pleadings. But it is claimed that a surrender and cancellation of the receipt, could not, if made as testified to, change the $2,000 from an advancement to an absolute gift. In short, it is claimed that the intestate could not by any act short of a will executed in due form, change what he had once delivered and properly evidenced as an advancement, to an absolute gift. In support of this, it is urged that when a man has once delivered property in such a manner that it has become an advancement towards, or in satisfaction of, the share which the receiver, as heir, would be entitled to receive from the estate of the giver, the giver has parted with all beneficial interest in the property which he has or can have in his lifetime; that he cannot recall the same from the heir, nor charge the heir with the use of the property; that the only right remaining in the ancestor, is that of having the property thus delivered, reckoned towards, or

81

in satisfaction of, the heir's share in the distribution of his estate ; that to allow a man to surrender or cancel this right, which pertains solely to the distribution of his estate after his decease, in any other way than by a duly executed will, is contrary to the policy and intent of the statute in regard to the disposition of property by will. This view at first appears to have some plausibility. It must be conceded that when a man delivers property in such a manner that it becomes an advancement, he parts with all beneficial interest in it, and only retains the right to have it reckoned in the distribution of his estate towards, or in satisfaction of, that portion of his estate which the heir would be entitled to. It is, also, clearly against the statute in regard to the disposition of property by will, to allow a person to *direct* or *control* the distribution of his estate in any other way than by a legally executed will.

The fallacy of this view lies in treating property thus advanced, as a part of a man's estate before his death. A man's estate is what he leaves at his decease. During his life, a man may dispose of his property as he pleases. If he make an absolute gift, it will very likely affect the amount which he will leave to constitute his estate. Yet he has a right while living, to deliver property as an absolute gift. By the delivery of property as an advancement, and the surrender or cancellation of his right to have the property so delivered, reckoned as an advancement, the owner accomplishes by two acts what he may accomplish by one act in delivering the same property as an absolute gift. As the whole necessarily includes all its parts, the right to make a gift includes and carries with it the right to deliver property as an advancement, and then to discharge the advancement. It can make no difference in law, whether the giver accomplishes the same thing by two acts or by one act. The result arrived at is the same. The two acts no more contravene the policy of the law in regard to a man's controlling the distribution of his property after his decease, than the one. A man who discharges an advancement in his lifetime, affects, it may be, incidentally, the distribution of the property he may leave at his decease ; but no more so, and in much the same way, he affects it when he makes an absolute gift. He does not

in such a case *direct* or *control* the distribution of the property which he *leaves* at his decease. This he can do only by a legally executed will. He simply withdraws what he has once delivered as an advancement, from being reckoned as a part of his estate in the distribution thereof, the same as he does when he makes an absolute gift. The right to have the property delivered, reckoned as an advancement, is his right, and not the right of those who may prove to be his heirs. It is a right he has retained to himself in the property delivered, as against the receiver of the property. Its surrender or cancellation may have the effect to lessen the shares of other heirs, but no more so than an absolute gift of the same property. He may discharge this right in the same way he may any other right which pertains to him personally. The counsel for the estate has called our attention to no decided case which supports the view he urges upon us. Only two cases have come under our notice in which evidence has been received tending to show that the intestate had attempted to change an advancement to a gift. In *Clark* v. *Warner*, 6 Conn. 355, the intestate had charged to some of his children various articles towards their respective portions. To the appellant the charge was as follows: "Salisbury, January, 1803. Nathaniel Clark, my son, Dr. The following articles that may be charged, are to go towards his portion." Then followed the charges. In the opposite column the intestate had written: "Salisbury, January, 1823. To the contrary by a gift, I balance my son, Nathaniel C. Clark's account. N. CLARK." Similar charges and entries were made against his other children. The court say: "If the entries are to receive their greatest effect, they would have the effect only of a gift by the father to these children; and in that view, according to the doctrine of this court in *Hatch et al.* v. *Straight*, 3 Conn. 31, they must be deemed advancements. * * * * Had the deceased explicitly declared that they were not to be deemed advancements, or part portion, the case might have been different. But his entries are not to this effect. They seem to me merely to pursue his intentions, expressed when he made the charges. They were not to stand against the children as *debts*, but as *gifts*, and gifts, too, towards their portions."

By this extract from the opinion, it is apparent that all gifts which at common law would be advancements in that state, were presumed to have been made as advancements, if nothing more was shown, though the intention of the intestate, if made known to the contrary, would control. The right of the intestate to change advancements to gifts that could not be reckoned as advancements, was assumed, and not raised or discussed in the case. In *Gilbert* v. *Witherel*, 2 Sim. & S. 254, the father had advanced his son £10,000, to go into business with, and taken his note therefor. The son made payments on the note, became involved in the business, and the father took the property and assumed the debts. The son had continued in the business at the request of his father, against his own wishes. The son claimed that the father was to surrender the note if he did not get pay on it out of the property which he passed over to him. Subsequently the son had, in writing, stated and acknowledged that a certain sum was due on the note to his father. The father, a few days before his decease, when the son was not present, had the note burned. The son claimed that this act extinguished it as a debt and as an advancement. The court held that though the destruction of the note by the father discharged the debt, yet, under the statute 22 & 23 Charles, relating to the distribution of estates, the amount acknowledged due by the son, remained an advancement. The only thing considered by the court was, the effect of the destruction of the note, and not the right of the father to change an advancement to a gift that could not be reckoned as an advancement. By the statutes under which these decisions were made, all gifts by the father to a child, made towards the establishment of the child in life, if nothing were shown to the contrary, were presumed to have been made as advancements towards, or in satisfaction of, the child's portion in the father's estate. By our statute, as we have seen, such is not the presumption of law, unless the gift is evidenced as an advancement in one of the ways named in the statute. Hence the above-named decisions would not be entirely applicable here, nor do they sustain the view urged by the counsel for the estate. We think there was no error in the admission of the testimony of Mary Wheeler.

The testimony of the other witnesses is claimed to have been inadmissible on two other grounds: first, that the declarations of the intestate, testified to by the witnesses, if made, do not necessarily relate to the surrender and cancellation of the receipt. Although the intestate did not say that he had had a receipt against the appellant and had surrendered it, he did say in substance to one, that he had given the appellant something handsome, and if he did well for him, he should give him more; to another, that he had held a writing—not a note—against the appellant, and had made the appellant a present of it; and to the others, that he had held claims against the appellant, but had none then. In the absence of all testimony tending to show that the intestate had ever given any other thing to the appellant, or had held any other writing or claim against him, we think these declarations, in connection with the circumstances under which they were made, may be said to refer fairly to the matter in issue between the parties, and admissible so far as the objection rests upon this ground.

The second ground of objection to this testimony is, that these declarations are hearsay, and for that reason inadmissible. Hearsay testimony is sometimes admissible. The declarations of deceased persons made against their interest or right, are admissible against those who claim in the interest or right of such deceased persons. 2 Saund. Pl. & Ev. 557; *Inot* v. *Finch et al.* 1 Taunt. 139. In 1 Greenl. Ev. § 189, it is said: " The admissions of one person are also evidence against another, in respect of privity between them. * * * When the party, by his admissions, has qualified his own right, and another claims to succeed him as heir, executor, or the like, he succeeds only to the right as thus qualified at the time when his title commenced; and the admissions are receivable in evidence against the representative, in the same manner they would have been against the party represented." In *Inot* v. *Finch et al.*, *supra*, the action was trespass for taking three mares, the property of the plaintiff, and converting them to the use of the defendants. The defendants justified under a *heriot custom*, and the question was, whether one Alice Watson, the tenant, was possessed of the mares at the time of her death.

It was conceded they had been her property, but the plaintiff claimed she had transferred them to him before her death, and to prove this, he offered to show that Mrs. Watson had stated that she had given up her farm and stock to him. This evidence was excluded, because the declarations accompanied no act done by the deceased in regard to the property claimed to have been transferred. For the exclusion of this evidence, a new trial was granted. Lord MANSFIELD, Ch. J., says : " Had this been an action between Mrs. Watson and the present plaintiff, her acknowledgment that the property belonged to him might clearly have been given in evidence. It ought, therefore, to have been received in the present instance, because the right of the lord of the manor depended upon her title." In the case at bar, the administrator and the other heirs, in regard to the $2,000, stand in the right of the intestate. In his right they claim this $2,000 is to be reckoned as a part of the intestate's estate, in the distribution thereof, and as a charge to that amount upon the plaintiff's share in the estate. The question is, had the intestate at his decease the right to have this $2,000 so reckoned and treated ? His declarations tending to show that he had no such right, we think, on these authorities, were admissible as against the administrator, and as against the other heirs whose interests the administrator in this suit represents, who all stand in the right of the intestate.

Mrs. Mary Louisa Merrill is one of the heirs of the intestate, and as such, though not a party of record, is directly interested in the result of this suit. If the plaintiff is charged with the $2,000 as an advancement, her share of the estate will be increased. If the plaintiff is not so charged, her share will be proportionately less. Her interests being thus directly affected by the result of this suit, her husband, Bailey W. Merrill, was properly excluded from testifying. *Carpenter et ux.* v. *Moore et als.* 43 Vt. 392.

If the intestate made the declarations which the defendant offered to show by Josiah Gilson, in the presence and hearing of Mary Wheeler, it was not a declaration which affected her interest in any manner. Hence she was not called upon either to admit or deny it. She might or might not have been inclined to have

corrected the statement offered to be shown, if made by the intestate in her hearing. She was under no duty to do so, to protect any right pertaining to her. Her duty to her husband would have been quite as well discharged by calling his attention in private to any misstatements he had made, as to have done so before a stranger who had no interest or right to know how the fact was. As this testimony was offered only to impeach Mrs. Wheeler as a witness, it was properly excluded.

Judgment affirmed.