## HORACE WILLEY, ADM'R, *v.* WILLIAM HUNTER.

*Husband.  Administrator.  Witness.  Interest.  Disqualification.  R. L. s. 1001–3.  Witness Act.  Referee. Adverse Possession. · Damages.  Raising Dam.  Setting Water Back.*

1.  A husband, who is administrator of the estate of his wife's father, she being sole heir, is a witness in an action, prosecuted by him as administrator, to recover for damages occasioned by the defendant's raising his dam, and thereby causing the water to set back on the intestate's land; and this on the ground that the wife was not an actual party to the suit, and the statute—R. L. s. 1001—had removed the disqualifying element of interest.

2.  But if the husband were disqualified because of his wife's interest, her release, executed to a third party in trust for her husband, with an indemnity to her against costs, would not remove his incompetency.

3.  In such a case the defendant is not a witness under the statute—R. L. s. 1003—to prove facts that bear directly upon the main issue; or, facts collateral to the issue, if immaterial; or, a contract, evidenced by deed, though made with a party now living.

4.  The finding of a referee will not be disturbed for the error of receiving evidence out of the usual order of admitting testimony, unless the party complaining affirmatively shows that he thereby suffered substantial injustice.

5.  ADVERSE POSSESSION.  A party, occupying another's land, may announce *by his acts, as well as by his words*, that he is not occupying adversely, under a claim of right; thus, the defendant yielded to the intestate's demands to have the water in the dam drawn down, and offered to buy the right to flow the premises; *Held*, that it was an interruption of any adverse use.

6.  DAMAGES.  The defendant raised his dam and thereby caused the water to set back into the intestate's cellar; *Held*, that in estimating the damages, it was proper to take into account the damage to the building by reason of dampness, and also to the rental value.

7.  It is presumed that the referee confined his estimate of damages to those sustained within six years, when the plaintiff conceded that he could not recover beyond that period.

8.  CONTRIBUTORY NEGLIGENCE.  The plaintiff's house was about thirty feet from the dam.  He was not guilty of contributory negligence in keeping open a drain whereby the water set back into the cellar.  No facts, *q. v.*, were reported as to the bridge over the dam, which prevent the plaintiff's recovery.

9. AMENDMENT. The declaration counted on damage to the house as a structure; under a reference it could be amended so as to recover damage to the rental value.

CASE, in two counts, for erecting and maintaining a dam. Heard on the report of a referee, December Term, 1883, ROWELL, J., presiding. Judgment for the plaintiff.

The dam in question is in Topsham. The intestate's dwelling-house was " situated within thirty feet of the east bank of the stream." The lower end of the drain leading from the cellar was " under the water at the edge of the stream." The referee found as to the bridge over the dam: " I find that with nothing below the bridge to obstruct or hinder the free passage of the water, there is ample room for all the water of that stream to flow under the bridge, except it might be blocked up at the bridge with ice or debris brought down by a flood." As to the cellar, &c.: " That in times of very high water, the water does so flow into the cellar through the drain, and this in consequence of the height of the dam, and also for the reason that the dam's being there prevents as free a passage of water under the bridge as would otherwise be, and so causes the water to rise high enough at the end of the drain to flow into the cellar, * * * * and has thus rendered the cellar damp and unwholesome, and in consequence has, to some extent, rendered the house damp and mouldy. The first time that it is claimed by plaintiff that water came into the cellar was about thirteen years ago, and I do not find that any trouble of the kind was experienced till this last date.

" The defendant claimed that the ground on which the house stands is wet and heavy,—just such land as would be likely to cause the cellar to be damp and wet; and also that the water did not come from the stream, but from the surface of the land around the house. But I find that the soil and ground about the house is as dry in ordinary times as the average, and I do not find that the wet in the cellar comes from the ground around. But I do find that the body of still water in the pond so near the house, does cause the water from it to percolate through the intervening land and so renders the cellar damp at all times when the pond is full and renders the house damp and mouldy, so much so that water has collected on the walls; and paper will not stay

on the walls, and so has damaged the house itself, and has lessened the value of the same; and has lessened the value of the yearly rental thereof."

The defendant offered himself as a witness: (1) "to show his contract with, and the property purchased from, William Dow, and the condition of the property thus purchased. Dow being alive and competent to testify, as facts bearing collaterally upon the cause of action in issue and on trial, and as tending to show that the cause of action in issue and on trial never existed;" (2) "to show subsequent purchases by him between the years 1845 and 1853, and the location and boundaries of the land thus purchased, and what was told him by deceased owners as to where the Pomroy east line was, as facts bearing collaterally upon the cause of action in issue and on trial, and as tending to show that the cause of action in issue and on trial never existed, and as tending to establish the fact of where said east line was;" (3) "to show his use and occupancy of said premises including his said water privilege, and the condition of the same from the time of his purchase until January, 1862, as bearing collaterally upon the cause of action in issue and on trial and as tending to show that the cause of action in issue and on trial never existed."

The referee received this testimony, but stated that he gave it no effect, as he considered the witness disqualified by the statute. As to prescription, the referee reported: "The defendant built the new dam about five years before Chamberlin bought of McConnell and Eastman and wife, and has kept and used and occupied the flowage caused by the new dam since about 1860 by means of the flashboards and the raising of the dam in 1876, except I find that Chamberlin in his lifetime and before the commencement of this suit, at various times complained to Hunter that the height of the dam, caused the flowage to injure his water privilege, and house and cellar, and demanded of Hunter that he take the water down, and that at some time, when Chamberlin so complained and demanded that the water be taken down, Hunter did draw off the water in the pond in compliance with such demand. I find further that Hunter did not at any of these times, or at any time when the subject was under consideration, claim that he had a right to so flow any of Chamberlin's land, but did claim that the flowage did not

31

injure Chamberlin, and at one time he proposed to buy the right to so flow of Chamberlin."

Mr. Harvey was allowed to testify, after he had stated to the referee that the plaintiff's rebutting testimony was closed, unless, on consultation with his associate counsel, Mr. E. W. Smith, who was not then present, he should desire to call other witnesses. The suit was commenced by Chamberlin in November, 1879. He died in August, 1880. The hearing before the referee commenced, December 14, 1882; was continued to January 16, 1883, and was closed June 1, 1883. On January 17, 1883, Mrs. Sarah L. Willey, wife of Horace Willey, Jr., sold, assigned, and released all her right in this suit to S. G. Corliss "to hold the same in trust, solely for, and for the benefit of the said Horace Willey, Jr." The release was signed by both husband and wife. On the same day said Corliss executed an indemnity to Mrs. Willey saving her and the estate of Jacob B. Chamberlin harmless from all costs arising from the suit.

The other facts are sufficiently stated in the opinion.

*J. K. Darling* and *J. H. Watson,* for the defendant.

Willey was not a witness. The statute does not affect the common-law rule in regard to husband and wife. *Carpenter, Ex'r,* v. *Moore,* 43 Vt. 392; *Wheeler* v. *Wheeler,* 47 Vt. 637. Mrs. Willey only attempted to release her interest in *this suit ;*—not her interest in the Chamberlin estate. *Haworth* v. *Wallace,* 14 Penn. St. 118; *Montgomery* v. *Grant,* 57 Penn. St. 243; *Cummings* v. *Fullam,* 13 Vt. 441; *Kennedy, Adm'r,* v. *Couris, Adm'r,* 3 B. Mon. 322; *Hopkinson* v. *Guildhall,* 19 Vt. 533; *Jarvis* v. *Barker,* 3 Vt. 445; *Amlot* v. *Evans,* 7 M. & W. 456; *Labaree* v. *Wood,* 54 Vt. 452. The referee erred in refusing to consider the testimony of the defendant. *Park* v. *Moore,* 13 Vt. 183; *Chase* v. *School Dist.* 47 Vt. 524; *Patch* v. *Keeler,* 27 Vt. 252; *Read* v. *Sturtevant,* 40 Vt. 524; *Hollister* v. *Young,* 42 Vt. 402; *Merrill* v. *Pinney,* 43 Vt. 605; *Baxter* v. *Knowles,* 12 Allen, 114. The evidence

was as to facts bearing collaterally upon the cause of action. *Morse* v. *Low*, 44 Vt. 561; *Chaffee* v. *Hooper*, 54 Vt. 513; *Poe* v. *Domie*, 54 Mo. 119; *Martin* v. *Jones*, 59 Mo. 187.

The defendant had gained the right to flow the land by adverse occupancy. *Perrin* v. *Garfield*, 37 Vt. 310; *University of Vermont* v. *Joslyn*, 21 Vt. 52; *Robinson* v. *Douglas*, 2 Aik. 364; *Jackson* v. *Demont*, 9 Johns. 60. It is presumed that the use was under a claim of right. *Plimpton* v. *Converse*, 44 Vt. 161; *Arbuckle* v. *Ward*, 29 Vt. 43; *White* v. *Chapin*, 12 Allen, 519; *Watkins* v. *Peck*, 13 N. H. 360. The referee finds, "that the soil and ground about the house are as dry in ordinary times as the average." There was no use for a drain; and the defendant was guilty of contributory negligence in keeping it open. *Chase* v. *N. Y. C. R. R. Co.* 24 Barb. 273; *Robins* v. *Cone*, 22 Vt. 213; *Luxford* v. *Large*, 5 C. & P. 421. The bridge partially obstructed the water; hence, the injury was caused by the concurrent act of the town and defendant. See *Rover* v. *Grouth Bridge*, 21 Pick. 344; *Parker* v. *Lowell*, 11 Gray, 353; 9 Hun, 517. As to damages, see *Harbin* v. *Green*, Hob. 189; *Shadwell* v. *Hutchinson*, 4 C. & P. 333; *Pinney* v. *Berry*, 61 Mo. 359; *Chipman* v. *Palmer*, 9 Hun, 517; *Fitter* v. *Beal*, 1 Raym. Ld. 339; Wood Mayne Dam. s. 575.

*R. M. Harvey*, for the plaintiff.

The administrator was a witness. *Fuller* v. *Adams*, 44 Vt. 543; *Kimball* v. *Baxter*, 27 Vt. 628; 1 Greenl. Ev. p. 481; Sch. Dom. Rel. 63; *Cram* v. *Cram*, 33 Vt. 15; *Carpenter* v. *Moore*, 43 Vt. 392; 31 Vt. 509; 36 Vt. 142; R. L. s. 1009; *Wheeler* v. *Wheeler*, 47 Vt. 637; *Rut. & B. R. R. Co.* v. *Lincoln*, 29 Vt. 206. The defendant gained no right by adverse use. 13 Met. 429; 13 Conn. 492; 2 Wash. R. P. 322; 1 Vt. 53; 5 Vt. 255; 32 Vt. 183; 36 Vt. 503. The question of contributory negligence is one of fact and not law. *Allen* v. *Hancock*, 16 Vt. 230; *Rice* v. *Montpelier*, 19 Vt. 470; *Hill* v. *New Haven*, 37 Vt. 501.

The opinion of the court was delivered by

Ross, J. I. It is contended by the defendant, that the referee improperly received and considered, the testimony of Horace Willey, the administrator of the estate of Jacob B. Chamberlin. This suit was commenced by the intestate, and on his decease the administrator entered to prosecute. It is to recover for damages to the real estate of the intestate, alleged to have been occasioned by the defendant's wrongful obstruction of a stream of water, causing it to set back upon the premises of the intestate. It is contended that the administrator was incompetent to testify in the case because his wife is sole heir to the estate of the intestate. Whether that estate is solvent, or insolvent, is not found by the referee. For aught that is reported, whatever sum, if any, may be recovered, will be wholly required to pay the debts due from the estate. Also, it may wholly avail to enhance the share of the wife of the administrator in the estate. It does not affirmatively appear that the wife is interested in the event of the suit. She is not a party to it. If the whole estate is required to pay the debts proved against it, she will receive nothing, however much may be recovered in this suit, nor will she be adversely affected if the defendant shall recover his costs. Such judgment for costs would be against the administrator personally, as for his own debt. *O'Hear* v. *Skeeles*, 22 Vt. 152. The administrator would have to look to the estate to reimburse him for paying such costs. The heirs would not be personally liable for such costs, unless the suit was prosecuted for their benefit; that is, when there was an estate above the debts due from the estate, to descend to the heirs. *Baxter, Adm'r,* v. *Buck,* 10 Vt. 548; *Hopkinson, Adm'r,* v. *Guildhall,* 19 Vt. 533.

It is necessary for a party objecting to a witness as incompetent, on account of interest in the result of the suit, to show affirmatively the disqualifying interest. We might dispose of this contention upon the ground that the defendant has not affirmatively shown that the wife of the admin-

istrator had such an interest in the result of this suit as under the law, as it was before the passage of the act of 1852, would have disqualified her as a witness. In the early case of *Phelps* v. *Hall*, 2 Tyler, 399, which does not seem to have ever been questioned, or criticised, it is said by the court: "Indeed some distinctions, which exclude some and admit others to testify, seem very nice. The remainder man cannot, say the books, be a witness, but the heir-at-law may, although his ancestor may be on his death-bed, expiring of old age. The rule which has governed this court, is, that the interest which shall exclude a person from testifying must be a *direct interest* in the event of the suit; not a contingent, remote, or possible interest; and in all cases of doubt, whether the interest is direct or not, the court will admit the witness to testify, and submit the credibility of his testimony to the jury."

But, assuming there was an estate to descend to her as heir, so that she would be interested, indirectly, at least, in the result of the suit, the inquiry arises, whether this places her in such relation to the suit as renders her husband incompetent to testify in the case. An interest in the event of the suit, since the act of 1852, does not disqualify. The disqualification of the husband, if any, arises from the common-law policy, which has not as yet, in this State been greatly modified by statute, which prohibits the husband and wife from testifying for, or against, each other. The decisions of this court, in regard to the relation which the wife must sustain to the suit in order to prohibit the husband from being a witness, do not, at first, seem to be harmonious. The conflict, however, is seeming, rather than real. The earliest case which I have found in which the rule governing this class of cases is stated, is *Williams* v. *Baldwin*, 7 Vt. 503. In that case, it was contended, that the rule would exclude the widow of the intestate, to matters which transpired during the coverture, in which the husband was interested. With his usual precision and clear-

ness, the elder Judge ROYCE states the rule as follows: "The rule of exclusion on which the plaintiff relies is mainly a rule of policy, and has never, to my recollection, been applied, except in cases to which the husband or wife was a party, or where the estate of either was to be directly affected. But when the question arises collaterally, as in suits between third persons, it then becomes solely a question of interest."

*Rut. & B. R. R. Co.* v. *Lincoln's Estate*, 29 Vt. 206, was an appeal by the defendant from the allowance by the commissioners of a claim for a subscription to the capital stock of the plaintiff. On the trial in the County Court, one of the heirs of the estate was allowed to testify, whose husband had signed the bond for the appeal with the administrator. The administrator had abandoned the defence of the suit; the heirs had assumed its defence and the husband had given a bond to the administrator to indemnify him against any liability on account of the suit. The husband was interested in the event of the suit, but not a party to it. On exceptions, this court held, that the wife was properly allowed to testify. The court dispose of the question in very few words, and hold that the wife's testimony is not objectionable on the ground either of her interest, or that of her husband, and that it did not tend to violate any confidence between husband and wife. In *Cram, Adm'r*, v. *Cram*, 33 Vt. 15, in which it is held that the wife of the administrator, in whose name the suit is prosecuted, is excluded from being a witness by this rule of policy. *Rut. & B. R. R. Co.* v. *Lincoln's Estate, supra*, is remarked upon, and distinguished from the case in hand, the court saying of the latter case: "The husband of the witness offered was not a *party* to the suit, although he was interested in its event by reason of having signed the bond of the administrator for the prosecution of the appeal, and also another bond to the administrator to indemnify him against any liability on account of the suit, and his wife was one of

the heirs interested in the estate against which the plaintiff's case was preferred; and the ground of the admission of the wife in that case was that she did not come within the rule of exclusion on the ground of *policy,*—there being 'nothing in the case to show that her testimony tended to violate any confidence between husband and wife,'—and that the statute had removed the disqualification arising from her interest or that of her husband in the event of the suit."

*Carpenter, Ex'r,* v. *Moore et al.* 43 Vt. 392, is relied upon by the defendant as an authority for excluding the administrator Willey from testifying, on account of the interest of his wife in the event of the suit. That was an appeal from the probate of a will. On the trial in the County Court the wife of one of the appellants was rejected as a witness, and also the wife of one of the heirs of the estate of the testate, who was not a party of record to the suit. Judge PECK, in rendering the decision, speaking of the statute of 1852, says: "Under the statute in question, it must be regarded as settled, that when the husband is living and a party to the suit, and the wife not a party, the wife is not a competent witness,"—citing authorities. Hence the wife of the appellant was properly excluded. Again: "But where the husband is not a party to the suit, either real or nominal, but interested only collaterally in the event of the suit, as being bail for costs, or in other like manner, the wife, though not a party to the suit, is not rendered incompetent by the marital relation,"—citing *Rut. & B. R. R. Co.* v. *Lincoln's Estate, supra.* He further says: "It is insisted on the part of the defence that that case is an authority for the admission of the wife of Artemus C. Powers, he not being a party to the suit; at least, not a party of record. This position is sound, if this suit or proceeding is to be regarded simply in the light of an ordinary suit between party and party, and the interest of the heirs not parties of record, as collateral merely, and to have only the same effect as the

interest arising from being bail for costs, or other collateral interest of like character." He then proceeds to state that the proceedings for the probate of a will bind all the heirs, and make them in effect all parties, whether parties to the record as contestants of the will or not. The decision recognizes the authority of *Rut. & B. R. R. Co.* v. *Lincoln's Estate,* to the fullest extent, but holds that Artemus C. Powers, though not a party to the record, was a real party to the proceeding, and for that reason his wife was properly excluded as a witness. *Wheeler* v. *Wheeler's Estate,* 47 Vt. 637, also relied upon by the defendant, was an appeal by one of the heirs to the estate from the decree of the Probate Court distributing the estate, in which the appellant was charged with $2,000 as an advancement. It is apparent that all the heirs to the estate were real parties to the decree appealed from, whether they were named as parties to the record or not. Each heir's share in the estate was involved in the decree appealed from, and was increased or diminished by the result of the appeal suit. Neither *Carpenter, Ex'r,* v. *Moore et al.,* nor *Wheeler* v. *Wheeler's Estate,* contravenes the doctrine announced in *Williams* v. *Baldwin, supra,* held in *Rut. & B. R. R. Co.* v. *Lincoln's Estate, supra,* and recognized by subsequent decisions, that the husband, to render the wife incompetent as a witness, must be an actual or real party to the suit, or proceeding; and conversely, to render the husband incompetent, the wife must be an actual or real party to the suit or proceeding; that an interest alone in the event of the suit, by one, does not render the other party to the coverture incompetent to testify, the disqualifying element of interest alone having been removed by the statute of 1852. Upon this view of the law as settled by the decisions of this court, the plaintiff, without regard to the so-called release, was competent to testify; and the referee did not err in receiving and considering his testimony. If rendered incompetent by the interest of his wife as heir to the estate, *Baxter, Adm'x,* v.

*Buck,* 10 Vt. 548, and *Hopkinson, Adm'x,* v. *Guildhall,* 19 Vt. 533, are conclusive that the release was insufficient to remove the incompetency.

II.   It is contended that the referee erred in refusing to consider the defendant's testimony.   It was offered and received, on three distinct grounds, and then not considered; as the referee concluded it was inadmissible.   Dow was living, in regard to the contract with whom the first offer was made.   That contract was evidenced by a deed which could not be enlarged, lessened, nor varied by parol testimony.   Hence he could not properly be allowed to testify to the contract although the other party thereto was living, so as to be within the proviso or exception to sec. 1003, R. L. If the other facts offered to be shown under this and the second offer could be held to be collateral to the issue on trial, and so within the decisions on that subject,—in regard to which no decision is made,—under the findings of the referee they were wholly immaterial to any issue not found by the referee in favor of the defendant.   The boundaries of the defendant's subsequent purchases, so far as affecting this suit, are found in favor of the defendant.   The matters embraced in the third offer bore directly upon the main issue on trial,—whether the defendant had wrongfully set back the water of the stream upon the premises of the intestate.   The statute excludes him from being a witness in regard to such matters.   R. L. s. 1003.

III.   The allowance of the testimony of R. M. Harvey was in the discretion of the referee.   Neither the County Court, nor this court, in revising the action of the County Court, will disturb the report of a referee for not observing the usual order in admitting testimony, unless the party complaining affirmatively shows that he has thereby suffered substantial injustice.

IV.   Yielding by the defendant to the intestate's demands to have the water drawn down, when it set back upon the premises of the intestate, and offering to buy the right to

flow the intestate's premises, were an interruption of any right which the defendant might otherwise have acquired by adverse use. Such use open, notorious, and especially when known to the other party, is evidence that it is under a claim of right. As was said by Judge VEAZEY, in a case at the last term in Windsor County, such use, or acts, may declare that they are done under a claim of right, as effectively as the words of the claimant. But the party attempting to establish a prescriptive right, or easement, in the premises of another by his acts, may, as clearly as with words, announce to the owner of the premises sought to be subjected, that by his acts thereon he is claiming no right. This the defendant unmistakably said to the intestate by his acts, when he drew down the water upon complaint, and offered to buy the right to flow the premises of the intestate; especially, when at such times he made no claim that he had a right to set the water back upon the intestate's premises. But it is contended that the report does not show but that the defendant had enjoyed the right for more than fifteen years before he complied with such demands, or made such offer. If this were so, the right would have become established as fully as if conveyed to the defendant by deed, and could not be waived or interrupted by such acquiescence or offer. It is for the defendant to establish that the intestate's premises have become servient to his by fifteen years uninterrupted adverse use. The referee only finds such a period of adverse use established, providing the acts specified are not an interruption. The specified acts being an interruption in the defendant's adverse use of the intestate's premises, the referee has not found his right established. As no right to recover damages for setting the water back upon the land purchased by the intestate of McConnell and Eastman and wife is found by the referee, it is immaterial to consider how the plaintiff's right of recovery would be affected for an invasion of the intestate's right to that tract

of land, by the fact that the defendant was in the adverse use of this right when the intestate purchased.

V. We do not find any facts reported raising the question of contributory negligence; nor any such facts found in regard to the highway bridge, as affects the plaintiff's right of recovery.

VI. The referee, early in his report, states that the plaintiff conceded that he could recover only for damages sustained within six years before the commencement of suit. It is to be presumed, until there is something found, or shown, to the contrary, that he has confined his estimate of damages to those sustained within that period. His findings confine the damages to the rental value of the house within that period. The damages to the house as a structure by reason of dampness and decay occasioned by the water setting back into the cellar must be presumed to have been occasioned within the same period. The damages to the house as a structure, and to its rental value, are the direct and proximate result of the wrongful act of the defendant in causing the water of the stream to set back into the cellar of the house. There was, therefore, no error on a referee's report, in the action of the County Court, in allowing the plaintiff to recover both sums found by the referee as damages. The damages to the house, as a structure, are clearly declared for, and the declaration might be amended, if necessary, so as to cover the damages to the rental value of the house. On this holding there is no occasion to consider the question of apportionment of the costs. Besides, on the facts found, setting the water back upon the intestate's water privilege, was an invasion of a right, which continued sufficiently, might ripen into an easement, and entitles the plaintiff to recover nominal damages. The result is,

Judgment affirmed.