IN RE ABEL G. BUGBEE'S WILL.

May Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 19, 1917.

*Witnesses—Competency of Party When Other Party is Dead— Evidence—Declarations Against Interest by Deceased Persons—Findings of Fact—Sufficiency—Transcript—Inferences—Advancement—Change to Absolute Gift—Burden of Proof—Right of Testator to Make or Change Advancement —Parol Evidence Rule—Wills—Intention—Ademption of Legacies—Identification of Property Bequeathed—Time as of which Will Speaks.*

Under P. S. 1589, as amended by No. 64, Acts 1908, and P. S. 1590, a party to a contract or cause of action in issue and on trial, the other party to which is dead, is competent to testify not alone to meet and explain the testimony of a living witness produced against him, but also any legitimate influence deducible therefrom.

In a hearing on an appeal from probate court upon a decree of distribution, where the executor testified to finding among testator's papers a receipt signed by a legatee, since deceased, to the effect that certain shares of corporate stock delivered to her by testator, during his lifetime, should be considered as an advancement, and also to circumstances indicating that the testator had not relinquished his right to have the stock reckoned as an advancement, the daughter of the deceased legatee was a competent witness to meet and explain this evidence, by testifying to a conversation with

testator, wherein he said that her mother was to share in the estate, and referred to the gift of the stock as a perfected gift.

The declarations of deceased persons against their interest or right are admissible in evidence against those who claim in their interest or right.

Upon the issue whether certain bank stock had been given by a testator to witness' mother an offer to show that the testator, in his lifetime, told the witness that he wanted some member of his family to know something about his property, that his estate had increased in late years, and the witness' mother was to share in such increase, that the increase was as much or more than certain bank stock he had given to his wife and witness' mother, and that he referred to such gift as a perfected gift, tested by the rule that any fact or circumstance is relevant which tends to show that a fact in issue is more or less probable, is not vitiated by irrelevant matter.

It is not reversible error for the trial court to fail to state in its findings the effect given to every subordinate fact in arriving at the ultimate fact or facts on which the judgment is based.

It is permissible only for the trial court to make the transcript of evidence a part of its findings of fact, and controlling, in order that the evidence may be examined in Supreme Court to see whether the court erred in finding or refusing to find certain facts, but not as an attempt to submit the determination of questions of fact to the Supreme Court.

The action of the trial court in failing to draw an inference from the circumstances appearing in evidence before it is not reversible error, when the circumstances do not compel but one inference.

In a hearing before the probate court upon a decree of distribution, the burden of proving that the testator during his life time changed an advancement into an absolute gift is upon the beneficiary under the will who claims that her share of the estate should not be extinguished thereby.

The right to have property delivered by a testator during his lifetime to a legatee reckoned as an advancement, is the right of the testator and not that of those who may prove to be the beneficiaries under the will; and he may discharge the right in the same way that he may relinquish any other right which pertains to him personally.

Evidence which goes only to the binding force of a written instrument does not infringe the parol evidence rule.

A will provided that if in the testator's lifetime, he should satisfy any
bequest and take a receipt from the legatee stating that the same
was an advancement, it should so be considered in the settlement
of his estate. Testator, during his lifetime, delivered to a legatee
certain shares of corporate stock, and took a receipt stating that
the delivery thereof was an advancement. *Held*, the retention of
such receipt by testator was not conclusive evidence of an advance-
ment, but relevant and competent evidence of testator's intention
to change the advancement to an absolute gift was admissible.

The rule that a legacy is adeemed by a delivery of the property to the
legatee by the testator during his lifetime applies only when the
will indicates the testator's intention that the property is to be
enjoyed in specie in its existing state, and of necessity, there must
be something to identify the property bequeathed with that subse-
quently delivered.

It cannot be said, as a matter of law, that a legacy of a certain number
of shares of bank stock was adeemed by the delivery of an equal
number of shares of the stock by the testator during his lifetime,
to the legatee, when the testator, at the time of the bequest,
possessed more shares of the stock than were specified in the vari-
ous bequests in the will, and when there was nothing in the will to
identify the stock bequeathed with that subsequently delivered.

A will speaks as of the time of the testator's death.

APPEAL from a decree of distribution made by the probate
court for the District of Orleans. Trial by court, upon an
agreed statement of facts and oral testimony, at the September
Term, 1916, Orleans County, *Stanton,* J., presiding. Judgment,
affirming the decree of the probate court. Appellants excepted.
The opinion states the case.

*Dunnett & Shields* for appellants.

*F. E. Alfred* and *J. W. Redmond* for appellees.

TAYLOR, J.    This is an appeal from the decree of distribu-
tion under the will of Abel G. Bugbee, who died at Derby in this
State on January 20, 1914.   The appellants are daughters of the
testator's only sister, Susan B. Blanchard.   The case was tried
by the court on an agreed statement of facts supplemented by
oral evidence.   The appellants bring the case here on exceptions

12

to the exclusion of evidence, to the refusal of the court to find in accordance with certain requests and to the judgment on the facts agreed and found.

The following facts appear from the agreed statement:

By the fourth paragraph of his will executed August 22, 1900, as altered by a codicil executed October 1, 1903, the testator gave his sister the use and income during her natural life of fifty shares of the capital stock of the Eastern Townships Bank with remainder over to his nieces, the appellants. The said Susan B. Blanchard survived the testator and died testate at Normal in the State of Illinois, May 26, 1915. On December 3, 1903, testator delivered to the said Susan B. Blanchard fifty shares of the capital stock of the Eastern Townships Bank and took a receipt for the same signed by her and the appellants, by the terms of which it was agreed that said stock should be accounted as a payment of said legacy in the settlement of his estate. The will provided that if in the testator's lifetime he should satisfy any of the bequests and take a receipt from the legatee stating that the same was an advancement towards such bequest, that the same should be so considered and treated by his executors. At the time he delivered said stock testator also took an order, signed by the same persons as the receipt, directing the bank to pay him all dividends, interest, etc., that should accrue on said stock until January, 1906. By the delivery of said stock and the taking of the receipt and order the testator intended to and did make an advancement thereof under the terms of the will, and the said Susan B. Blanchard and the appellants then so understood. Said order was delivered by the testator to the Eastern Townships Bank and he received the dividends on account of said stock to and including those paid January 1, 1906. Said order has always been in the custody of the bank or its successor.

Under date of January 31, 1906, testator wrote his sister the following letter which was duly received by her: "I herein mail to you the document with the names crossed out that you gave me in December, 1903, that then being your share of my estate. Now you will share in the estate the same as you would if that had not ever been given, feeling that what you have got, and get at my decease shall remain in your name so long as you live, the income to be used for your liberal support so long as you live and then divided equally share and share alike to Irene M.

Blanchard and Mrs. Frederick J. Steuber." The letter contained no enclosure. The only papers pertaining to her interest in her brother's estate ever signed by the said Susan B. Blanchard were the receipt and order referred to above. Between the time the original will was made and the date of said letter there was a material increase in the value of testator's estate. At the time said codicil was executed testator owned more shares of Eastern Townships Bank stock than the number specifically mentioned in the will. On March 1, 1912, the Eastern Townships Bank was consolidated with the Canadian Bank of Commerce which purchased all the assets and assumed all the liabilities of the former, issuing as consideration for the purchase its own stock of the same par value as the stock of the Eastern Townships Bank. The testator surrendered his stock in the Eastern Townships Bank and received in exchange stock of the Bank of Commerce of equal par value. At the time of his death he was the owner of 164 shares of the capital stock of latter bank of the par value of $100 per share. At the time the original will was executed testator owned the exact number of shares of corporate stock and the exact amount of bonds bequeathed in each particular instance.

The parties stipulated in the agreed statement that either party had the right to introduce at the hearing any pertinent and admissible evidence that did not change or contradict any of the facts therein agreed to. At the opening of the hearing the appellees called D. W. Davis, the executor, as a witness and showed by him among other things that he was formerly cashier, and at the time of the trial, president of the National Bank of Derby; that the testator had a safe deposit box in said bank from as early as 1886 to the time of his death; that he lived near the bank and frequently called there to examine the contents of the box— to take out or to put something into it; that on these occasions testator spent considerable time looking over the contents of the box; that after the testator's death witness found his valuable papers in this box and found none anywhere else; that among the papers in the box he found the receipt signed by Susan B. Blanchard and the appellants and another similar receipt signed by other parties; that only one receipt signed by Susan B. Blanchard and the appellants was found. The court made findings of fact in accordance with witness Davis' testimony.

For the purpose of meeting and explaining Davis' testimony

the appellants were admitted to testify to certain facts against objection as to their competency. On the strength of a letter shown to have been written by the testator to his sister and the testimony of the appellants received under exception the court found that at the time testator delivered the stock he requested and obtained two receipts which were alike in all particulars. Against the same objection and under exception Mrs. Steuber was permitted to testify as to the contents of a lost letter received by her mother from the testator early in February, 1906, explaining why he did not enclose the receipts in his letter of January 31, 1906, and stating that he would destroy them; "that it would be the same as if he sent them to us to destroy and she would share according to his will." Though requested, the court declined to find the contents of the letter to be as witness testified. For a like purpose the appellants offered to show by Mrs. Steuber that she visited the testator at his home in Derby in August, 1906; that while there he told her that he wanted some member of his family to know something about his property; that he showed her a book apparently containing an inventory of his stock and bonds; that he said she could see that his estate had increased a good deal in late years and that her mother was to share in that estate; that the increase was as much or more than the bank stock that he had given to her mother and his wife; and that he referred to the gift of the bank stock as a perfected gift. The offer was excluded to which appellants saved an exception.

The scope of the exception in the statute (P. S. 1590, as amended by No. 64, Acts of 1908) disqualifying a party to testify in his own favor when an executor or administrator is the other party was pointed out in *Gilfillan* v. *Gilfillan's Estate*, 90 Vt. 94, 100, 96 Atl. 704. It was there held that such party was competent to testify in his own favor to any fact or circumstance which tended to meet or explain the testimony of a living witness produced against him; in other words, to such affirmative facts as had a tendency to meet and destroy the effect of such testimony. If, as the appellees contend, the competency of the witness was affected by P. S. 1589, as amended by No. 64, Acts of 1908, because a party to the "contract or cause of action in issue and on trial," the same question is presented. The exceptions in favor of competency, so far as they are here material, are the same in both sections.

In considering the construction of the exception in question it is necessary to have in mind that P. S. 1589 and P. S. 1590 are themselves exceptions to the general rule of competency; that in their origin they were provisos of a statute having for its object the removal and not the creation of disqualifications. *Comstock's Adm'r* v. *Jacobs*, 89 Vt. 133, 140, 94 Atl. 497. Hence a construction should be given which inclines towards competency. We think the reasonable view of the exception is that it makes the living party competent to testify not alone to meet and explain the facts testified to by the witness but also any legitimate inference deducible therefrom. If the legislature had intended to restrict his testimony in the manner indicated, words of more restricted meaning would naturally have been employed. If the party were to be confined to rebutting the facts alone he would not enjoy the full benefit of the statute which makes him a competent witness to *meet* the testimony of the living witness produced against him. This is well illustrated in the case at bar. Davis' testimony was important only because of the inference sought to have drawn therefrom that the receipt was still operative and evidence that the testator had not changed the advancement into an absolute gift. The facts affording a basis of the inference could not be, at least were not, controverted. But facts existed, known only to the appellants, that tended to meet and destroy the effect of Davis' testimony.

The question of Mrs. Steuber's competency to testify to the facts detailed in the offer, therefore, depends upon their relevancy to the issues of fact raised by Davis' testimony and she was a competent witness so far as it was offered to show by her facts which would tend to rebut his testimony or the inferences to be drawn therefrom. *Gilfillan* v. *Gilfillan's Est.*, 90 Vt. 94, 102, 96 Atl. 704.

The question does not stand as it might if Davis had merely been called to produce the receipt. It might then have been argued with some force, if only so much was testified to by him as laid the foundation for receiving the receipt in evidence, that the case stood on the *prima facie* effect of the receipt as independent evidence and that the offered evidence did not tend to "meet and explain" his testimony. But he was improved as a witness for an entirely different purpose. On the agreed facts the production and identification of the receipt was unnecessary. It already appeared that such a receipt was signed and delivered

to the testator and that the transfer of the stock was then intended and understood by all the parties interested as an advancement under the will. Standing thus, the burden of showing that the testator had discharged his right to have the stock reckoned as an advancement was upon the appellants. This the testator's letter of January 31, 1906, set forth in the agreed statement of facts, strongly tended to show, if the "document" therein referred to was the receipt in question. To escape the effect of this letter Davis was called to testify, not alone to the finding of the receipt among the testator's valuable papers, but to circumstances indicating that it was still operative,—in other words, that the testator had not relinquished his right to have the stock reckoned as an advancement. We hold that Mrs. Steuber was a competent witness to give the offered evidence so far as it tended to rebut the inferences to be drawn from Davis' testimony.

The claim is made that the offer is vitiated by facts that were inadmissible in any view of the case and special stress is laid upon the part of the offer relating to testator's declarations. But the declarations of deceased persons against their interest or right are with us admissible against those who claim in their interest or right. *Wheeler* v. *Wheeler,* 47 Vt. 637; *Conn. River Sav. Bk.* v. *Albee,* 64 Vt. 571, 25 Atl. 487, 33 Am. St. Rep. 944; *Hopkins, Trustee* v. *Sargent's Est.,* 88 Vt. 217, 92 Atl. 14. See also *Redding* v. *Redding's Est.,* 69 Vt. 500, 38 Atl. 230; *Comstock's Adm'r* v. *Jacobs,* 86 Vt. 182, 84 Atl. 568.

The declaration here involved was against the testator's right and interest and so was admissible against the appellees who are claiming under him and in his right. Tested by the rule that any fact or circumstance is relevant which tends to show that a fact in issue is more or less probable the offer is not vitiated by irrelevant matter. The exception to the exclusion of the offered evidence will have to be sustained.

The appellants made numerous requests for specific findings and excepted to the failure of the court to comply therewith. As to several of the requests it is enough to say that if the facts called for are material they are only subordinate facts. It is not reversible error for the court to fail to state in its findings the effect given to every subordinate fact in arriving at the ultimate fact or facts on which the judgment is based. See *Allen's Adm'r* v. *Allen's Adm'rs,* 79 Vt. 173, 64 Atl. 1110. The practice of reviewing the whole evidence and classifying this

fact as found, or that fact as not found, would greatly extend the findings and ordinarily serve no good purpose.

The third request was for a finding in substance that by his letter of January 31, 1906, to his sister the testator intended to change the advancement into an absolute gift and that the "document" referred to was the receipt given for the advancement. Referring to this request the court states that it is unable to find what the document referred to was or that any document was mailed.

The transcript of the evidence is made part of the court's findings and controlling "as to any fact herein found or any request for finding herein denied." It is not quite clear what force the trial court intended thereby to give to the evidence; but it seems probable that it was intended to send the testimony up only that it might be examined to see whether the court erred in finding or refusing to find certain facts, rather than as an attempt to submit the determination of questions of fact to this Court, the former and not the latter course being alone permissible.

The testator's intention as to changing the advancement to an absolute gift was a question of fact and the evidence was conflicting. The letter indicated one intention, and the retention of the receipt another. His intention cannot be ascertained from the letter alone as a question of law despite the fact that the letter strongly indicates what that intention was. As to the document referred to, it was already agreed that none was sent; and while the fact that only one of two papers could have been referred to, one of which had from the first been out of the testator's control and was no longer of any force, strongly points to the receipt as the one intended, still the fact was one of inference for the trial court to draw, and beyond our control unless we can say that only one inference was possible. This we hesitate to do.

The substance of the sixth request was for a finding that the testator destroyed one receipt and thereby carried into effect the intention expressed in his letter of January 31, 1906, to permit his sister to share under the will the same as though no advancement had been made; and that the duplicate receipt was at that time either forgotten or overlooked. But of this there was no direct evidence and the fact if found must be inferred from the circumstances. It was for the trial court to draw the inference and as the circumstances did not compel but one inference, the

action of the court in denying the request was not reversible error.

The appellants excepted to the judgment affirming the decree of the probate court. So far as here material the decree was as follows: "As to the fourth bequest in said will said court doth find that the legacy of fifty shares of the capital stock of the Eastern Townships Bank to the said Susan B. Blanchard was fully satisfied in the lifetime of said testator by the delivery to said Susan B. Blanchard of the aforesaid shares of capital stock, as evidenced by the original receipt of the said Susan B. Blanchard and others."

In support of this exception it is urged that the evidence shows that the testator during his lifetime changed the advancement into an absolute gift. Conceding that their evidence strongly tended to indicate that fact, the fault with their position is that the burden was on them and the trial court has found against them. As we have already seen the evidence relied upon was not so clear and convincing that only a conclusion favorable to them could be drawn therefrom.

We come to the question whether the judgment can be sustained in spite of the error in excluding evidence. As bearing upon this question the appellees claim that the receipt itself was conclusive evidence of an advancement, made so by the terms of the will; and that the receipt is a contractual writing and so governed by the parol evidence rule. Early in the trial they interposed an objection raising the question of the relevancy of certain evidence offered to avoid the effect of the receipt. Whether the exception taken later covered this ground of objection does not clearly appear. The only finding based on such evidence was that when testator delivered the stock he requested and obtained duplicate receipts. As the same question would probably arise on a retrial, it seems advisable to treat the objection as not having been waived.

If the receipt is to be deemed a contract, that fact is not controlling of the question here. The contents of the writing and its original purpose and effect are not in issue. Appellees concede that the testator could change the advancement into an absolute gift notwithstanding the provision of the will. Their contention is that this could be accomplished only by the destruction or surrender of the receipt; that the will specifies the effect of the contingency that occurred when the receipt was taken;

and that to give effect to an intention to change the advancement into an absolute gift while retaining the receipt would be to change the will by an act of the testator *in pais,* which it is claimed is not permissible. The cases cited in support of this claim are to the effect that parol evidence would not be competent to show, contrary to the receipt, that an advancement had not originally been made. But our attention is directed to no case holding that such evidence would not be competent to show that the advancement had subsequently been converted into an absolute gift. That it would be competent to show by parol that the receipt had been surrendered or destroyed is shown by *Wheeler* v. *Wheeler's Est.,* 47 Vt. 637. The facts of that case required the court to go only so far, but the reasoning on which the decision is based goes further. It is clearly pointed out that a testator may remove an advancement from the operation of his will with the same freedom that he may dispose of his possessions in his lifetime. The right to have the property delivered reckoned as an advancement is his right and not that of those who may prove to be his beneficiaries under the will; and he may discharge the right in the same way that he may relinquish any other right which pertains to him personally. See *Harris* v. *Harris' Est.,* 82 Vt. 199, 210, 72 Atl. 912.

Appellants claimed that one of the duplicate receipts had been destroyed and their evidence tended to support the claim. It went to the binding force of the receipt and so did not infringe the parol evidence rule. *Webster* v. *Smith,* 72 Vt. 12, 47 Atl. 101; *Cameron* v. *Estabrooks,* 73 Vt. 73, 50 Atl. 638.

The ultimate question is, did the testator intend to discharge the right to have the delivery of the stock reckoned as an advancement? *Langdon* v. *Astor's Ex'rs,* 16 N. Y. 9, 34. The destruction or surrender of the receipt would be strong evidence of such an intention; but can it be said that they afford the only evidence thereof? Let us assume that the testator had written his sister that he waived his right to have the stock treated as an advancement, but for some undisclosed reason retained possession of the receipt. Could it be said that the unexplained retention of the receipt was conclusive evidence of his intention in spite of his express waiver of its provisions? We think it clear that the receipt has no such conclusive effect and that its continued existence would not make it necessary to exclude other relevant and competent evidence of testator's intention to change the advance-

ment to an absolute gift.     We are not now considering the weight to be given any particular evidence, a proper regard as to which will sufficiently protect the rights of the parties.

In this connection it is claimed that the bequest to Susan B. Blanchard was adeemed by the delivery of the stock.     The argument is that the bequest was specific and as such was fully satisfied by the conceded transfer of the stock.     The question turns on whether the bequest was in fact specific.     The rule invoked applies only when the will indicates the testator's intention that the property is to be enjoyed in specie in its existing state.     2 Williams on Executors, 1039.     Of necessity there must be something to identify the property bequeathed with that subsequently delivered.     The appellees concede that a legacy is presumed to be general rather than specific and that the mere fact that a testator in gifts of stock gives exactly the amount of a particular stock he has in hand is not sufficient to overcome the presumption; but it is urged that the fact that the testator "had the exact amount of stocks and securities that he bequeathed," together with the other facts and circumstances recited, compels the inference that the bequest was specific.     But their premise is faulty.     The testator possessed more shares of stock of the Eastern Townships Bank at the time the bequest to his sister was made than the will specified.     There is nothing in the will to identify the stock bequeathed with that subsequently delivered. The will speaks as of the time of the testator's death.     For aught that appears he had left after the transfer to his sister enough of the stock, or the later substituted stock, to provide for all of his bequests, treating Mrs. Blanchard's legacy as not satisfied. Standing thus it cannot be said as a matter of law that her legacy was adeemed.

It follows that no tenable ground is advanced why the judgment should be sustained notwithstanding the error found, and the appellants are entitled to the benefit of their exception.

*Judgment reversed and cause remanded.*