### JOSEPH M. NEWELL et al. v. HEMAN H. NEWELL.

Where the father conveys by deed certain lands to a son, and the consideration expressed in it was a pecuniary one, it was held that such conveyance could not be, *prima facie*, taken as an advancement to the son; and that, if parol evidence was admitted, tending to prove that the conveyance was in fact made for love and affection, so that it might be presumed to be an advancement, it was competent for the son to rebut such evidence by showing the true *intent* of the father in making the deed.

*Quære.* Whether, under the statute of Vermont, relative to advancements,a deed, purporting to have been made upon a valuable consideration,can be made an advancement, by extrinsic proof, showing that it was made for love and affection ?

THIS was an appeal from a decree of the probate court, upon a claim for advancements made by John Newell, deceased, in his lifetime, to Heman H. Newell, a son of the said John.

In the probate court, Joseph M. Newell and others, representatives of Orren Newell, deceased, who was a son of the said John Newell, claimed and alleged that the said Heman had been advanced by the said John in his lifetime, to the full amount of the said Heman's share of the said John's estate, in the manner following, viz : " that the said John, in " his lifetime, to wit :   on the sixth of October, 1836, by his " deed of that date, for the consideration of, nominally, $2,- " 000, but in fact for love and affection, and without any " pecuniary consideration, conveyed to the said Heman two " hundred acres of land, of the value of four thousand dollars, " and that, on the 22nd day of September, 1838, the said

" John, by his other deed of that date, for the consideration,
" nominally, of $2,000,—but in fact for love and affection,
" and without any pecuniary consideration, conveyed to the
" said Heman certain other lands, of the value of two thous-
" and dollars," and prayed that the sums so advanced to the
said Heman might be deducted from the said Heman's dis-
tributive share of the said John's estate.

The probate court, after hearing the testimony of the par-
ties, made a decree that the lands so deeded by the said John
to the said Heman should not be considered as an advance-
ment to the said Heman, and that the said Heman take one
distributive share of said estate, without any deduction on
account of said claim for advancements.    From this decree
the said Joseph M. and others appealed to this court.

After the appeal was entered in this court, testimony was
taken, by the consent of parties, relating to said claim for
advancements, the substance of which is as follows :

A day or two previous to the death of John Newell, Ezra
Holt was applied to to draw a deed from John Newell to
Heman H. Newell. Holt accordingly drew a deed, agreeably to
the said John's directions, bearing date the 22nd day of Sep-
tember, 1838, conveying to Heman H. Newell certain lands in
Charlotte.    No money was paid nor obligation given by said
Heman as a consideration for said deed.    The deed was ex-
ecuted by the said John in due form of law, and, at the time
of its execution, the said John remarked that Heman had
been faithful to him ; that he (John Newell) had received
some property of Heman's mother which belonged to He-
man ; that he (John Newell) had paid out something to
John and Orren, his other sons; that he had promised the
land described in this deed to Heman and that he gave He-
man this deed to make him equal with his (the said John's)
other sons.

The mother of Heman H. Newell was the second wife of
John Newell, and the other sons of the intestate were the
children of his first wife.    The property which the intestate
received from his second wife was of the value of four hun-
dred dollars.

It further appeared, from the testimony, that about ten
days previous to the death of the intestate, in conversation
with his nephew, Birdsey Newell, he said that as soon as he

was able he intended to go to Mr. Holt and make a deed to Heman of the land described in the deed dated September 22, 1838. At that time and at other times he stated to the said Birdsey that he had paid for his son, Orren, in all about four thousand dollars and had also paid considerable for his son John, and he further stated that he intended to execute this deed to make Heman equal with Orren. The value of the land conveyed by the latter deed was about twenty-six hundred dollars.

It appeared, from a copy of said deed, filed as evidence in the case, that the consideration therein expressed was two thousand dollars, paid by the said Heman to the said John.

It further appeared, from the testimony, that sundry payments had been in fact made by the said John in his lifetime for said Orren, to a large amount, and that the said Orren had, previous to his death, admitted that his father had paid for him from two to three thousand dollars.

*C. Adams*, for appellants.

The amount received by Heman in lands should (in law) be regarded as advancements to him.

The general proposition, contained in the statute of distributions, in force at John Newell's death (p. 349,) is clear and unequivocal. *Advancements shall be reckoned as part of the distributive share.*

*This statute further declares that deeds made for love and affection shall be deemed advancements*, but is silent as to the proof, leaving courts to ascertain the fact of the consideration in such manner as is consistent with legal usages. The argument, on the other side, that the proof of the character of the consideration must be derived from the deed only, is not well founded. Our statute of distributions is evidently copied from the Massachusetts act, (4 Mass. Rep. 683) and both are founded on the statute 22, Car. II. (Lovelass, p. 66). Neither of these statutes require that the deed should contain the evidence of the character of the consideration, and the courts in England, and this country, have uniformly admitted evidence *aliunde* to prove the consideration. Lovelass, 66 to 70, and cases there cited. *Scott v. Scott*, 1 Mass. 527. *Quarles v. Quarles*, 4 Mass. 680. *Hatch v. Straight*, 3 Conn. 31.

The policy of the English has been to enlarge the circle of legal advancements, and the character of the cases thus brought within it is greatly diversified.

The buying of an office, the purchase of a commission in the army, have been held to be advancements. So if the father settles rent, or, by articles, creates an annuity, it is advancement—so a reversion settled on a child is advancement —so provision in a marriage settlement, in behalf of future children, has been adjudged to be advancement, though in the nature of a purchase. Lovelass, 68, 69. *Edwards* v. *Freeman*, 2 *P. Wms.* 440 and 446. *Phiny* v. *Phiny*, 2. Vern. R. 638.

It has also been decided that lands descending as Borough English, shall be held an advancement. Lovelass, 68.

All considerations may be classed under two kinds : *valuable, and for love and affection.* Conveyances for an equivalent, either in money, goods, chattels, or choses, are upon a valuable consideration. Every other deed must be founded on love and affection. In other words, every deed for which an equivalent is not paid, is necessarily for love and affection. This is in conformity to the division laid down and established by elementary writers. 4 Kent, 464. 2 Bl. Com. 297, and evidently is the division on which our statute of distribution is based.

The intention of the grantor is to be learned from his conveyance only, and no evidence of any declarations is admissable. This proposition would seem to be in accordance with general principles, deriving but little confirmation from authority. Every man must be presumed to know the legal import of his own conveyances, and to have done precisely what he intended to do. Hence, courts are to take his acts as he leaves them, and give them their legal effect. Any other doctrine would necessarily place the whole community under the actual guardianship of the court ; and parties, instead of being permitted to make their own deeds; would have their lands conveyed according to the vague opinion of courts, founded on uncertain testimony.

Every man, during life, has the absolute control of his own property, and may give it in such direction as he chooses, by such conveyance as the law recognizes. Having made his conveyance, his power ceases. The effect of the convey-

CHITTENDEN,
January,
1841.
————
Newell
v.
Newell.

ance is to be learned from the declaration of the law upon the instrument, and not from the declaration of the party out of it. *Fawkener* v. *Watts*, 1 Atk. 406. *Hatch* v. *Straight*, 3 Conn. R. 31. *Clarke* v. *Warner*, 3 Conn. R. 356. *Dean* v. *Dean*, 6 Conn. 285.

Even in the case of wills, where the greatest latitude is given, and where the intention of the testator is the polar star, no evidence *aliunde* is admissible ; but the intention is' to be sought from the language of the instrument only. *Avery* v. *Chappell*, 6 Conn. R. 270.

The amount paid by the father for Orren Newell is not rightfully a subject of inquiry in this case.

The question, whether Orren Newell has been advanced, has not been raised in the court below, and, of course, cannot be raised here. It is also immaterial, in the decision of the question before the court, whether the father has paid any-thing for Orren Newell. The case of each. son must rest upon the evidence applicable to each, and evidence that one had been advanced, could not control a covueyance to the other. It could neither control nor enlarge its legal effect. If the father has paid any thing to Orren, beyond the amount refunded, it was and is a legal claim against his estate, for which the administrator of Orren Newell may be responsible. But, be that as it may, the distributive share of the heirs of Orren Newell in· the estate of John Newell cannot be affect-ed by the consideration of Orren Newell's indebtedness to his father. 17 Mass. R. 359.

*J. Maeck, for appellee.*

We insist that the legislature have prescribed the evidence necessary to make an advancement, both in real and personal estate, and, having prescribed what evidence shall be neces-sary,  it necessarily excludes any other mode of proof. *Statute*, page 349, sec. 76. The statute declares that where a deed is executed for love and affection, it shall be taken as an advancement to the child, and we insist that the fact that the deed was executed for love and affection cannot be shown by parol testimony. It must appear from the deed.

In other states, under similar statutes, it has been held that other than the statute proof was inadmissable. *Whit-*

*man* v. *Hapgood*, 10 Mass. R. 439, where the Mass. act is copied into the case, and it appears that our act is an exact transcript from theirs. *Osgood* v. *Breed's heirs*, 17 Mass. R. 358. *Bulkley* v. *Noble*, 2 Pickering, 237. *Bullard* v. *Bullard*, 5 Pickering, 527. *Harry Ashley*, appellant, 4 Pickering, 21. 2 Kent's Com. vol. 4, p. 418.

The appellants contend that the statute does not prescribe the character of the proof of an advancement, and that it may be made out by any satisfactory evidence. But they insist that they are entitled to parol evidence, tending to raise a presumption of advancement, and that we are not entitled to evidence of the same character to repel it. They further contend that, in all cases where the child receives property from the parent, and the reception does not create the relation of debtor and creditior between them, the law presumes it an advancement, and will admit no evidence to repel the presumption. We contend, on the contrary, that transactions between the parent and child may be such that they will either create a debt, be deemed an advancement, or an absolute gift, without any accountability on the part of the child, either to the parent, in his life time, or to have it reckoned to his share in the distribution of the parent's estate, and whether it belongs to the one or the other of these three classes, must depend upon the intention of the parties at the time of delivering the property.

1. The evidence in this case establishes, beyond all controversy, that the grantor, when he executed the deed, did not intend the appellee should ever account in any way for the land. The consideration was partly to remunerate him for his services, partly to repay him money he owed him for property received by the way of his mother, and partly to put him on a footing of equality with his other children.

2. Where the intestate has, in his life time, delivered property to one of his children, it may either create a debt from the child to the parent, or be deemed an advancement, or an absolute gift, according to the intentions of the parties at the time, and this intention is to be proved by such evidence as is admissible in other cases. That the parent may make an absolute gift to his child, which shall not be subject to be reckoned as an advancement, see *Osgood* v. *Breed's*

*Heirs,* 1 Mass. 358. *Henry Ashley,* Appellant, 4 Pickering, 21.

Our statute also plainly contemplates absolute gifts. p. 349, sect. 76. It cannot be contended, that, so far as personal property is concerned, it can be adjudged an advancement on any other proof than such as the statute prescribes.

No English case can be found where it has been held that an absolute gift shall be deemed an advancement, or where the party claiming the property as a naked gift, has been precluded from showing the true character of the transaction. But even if, in England, it may have been held that property, passed by the parent to the child without consideration, shall be deemed an advancement, still the cases would not be applicable here by reason of the difference between the two statutes. Their statute expressly declares that no child, upon whom the intestate settled any estate in lands or pecuniary portion equal to the distributive share of the other children, shall participate with them in the surplus, except in those cases where the amount he has received is not equal to his distributive share. Toller on Exrs. 374.

Our statute only directs the advancement, in certain cases, to be reckoned to the share, and, to constitute an advancement, it must be not only so intended, at the time, but that intention must be manifested in the mode pointed out by the statute.

In England, a provision made for the child by will, whether the same consist of real or personal estate, shall not be deemed an advancement. *Edwards* v. *Freeman,* 2. P. Wms. 440 and 446.

Laying the statute aside; where the parent delivers property to the child without any consideration, the law does not raise any presumption that it was an advancement, but, on the contrary, that it was a naked gift. However, even if it did, it is but the presumption of a fact in this case. It is raised by extrinsic evidence, and the rule is universal wherever a presumption is raised by extrinsic evidence, it may be rebutted by evidence of the same character. 3 Stark. Ev. 1040 and 1041, and cases there cited in the notes. 2 Atk. 69 and 99. *Cuthbert* v. *Peacock,* 2 Vernon, 593, where parol proof was allowed to show that a legacy was not intended as a satisfaction of a debt.

So whenever the law raises a presumption, from circumstances happening after the making of a will, that the testator intended to revoke it, this presumption is liable to be rebutted by parol evidence. *Johnston* v. *Johnston.* 1 Eng. Ec. R. 148–9. *Brady* v. *Cubitt,* Doug. 38. "I am clear," says Lord Mansfield, " that this presumption, like all others, may be rebutted by every sort of evidence." Doug. 40. *Davenport* v. *Mason,* 15 Mass. 85. —— v. *Dickson,* 1 Mason, 10. 1 Phil. Ev. 420. So when the law raised a legal presumption, from the face of the instruments themselves, without the aid of extrinsic evidence, parol evidence has been admitted to rebut it. *Wingfield* v. *Atkinson et al.* 2 Ves. 673. *Debeze* v. *Mann,* 2 Brown, Ch. R. 165. *Coote* v. *Boyd,* 2 Bro. C. C. 521. Powell on Mort. 1052, (a) and cases cited.

And the oral declarations of the party are admissible for this purpose, whether they were made at the time or not. *Ellison* v. *Cookson,* 1 Ves. Jr. 100. *Clinton* v. *Hooper,* do. 178.

Where a purchase is made by the father, in the name of a child, the law presumes it an advancement. But this presumption is liable to be rebutted by other evidence.

So it has sometimes been held that a deed from a parent to a child, where the consideration was expressed to be for love and affection, *prima facie,* purported to be an advancement. But this presumption might, also, be rebutted by other evidence. 1 Swift's Digest, 458. *Hatch* v. *Straight,* 3 Conn. 31. *Scott* vs. *Scott,* 1 Mass. 527. *Quarles* v. *Quarles,* 4 Mass. 680.

The opinion of the court was delivered by

BENNETT, J.——This case comes before this court, by an appeal from the decree of the court of probate.

It seems that John Newell, in his life time, conveyed by two certain deeds to his son, Heman H. Newell, certain lands for the consideration, as expressed in each of the deeds, of two thousand dollars; and it is insisted that these deeds were executed upon no other consideration than that of love and affection, and that the lands conveyed, should be adjudged an advancement to this heir. As these deeds, upon their face, purport to have been executed upon a pecuni-

CHITTENDEN,
*January,*
1841.

Newell
*v.*
Newell.

ary consideration, and not for love and affection, there can be no possible ground, *prima facie*, for treating them as advancements.   The presumption is against it, and the appellants must take upon themselves the labor of removing such presumption.   It is indeed questionable, in my opinion, whether, under our statute, relative to advancements, parol evidence can be received to show that a conveyance of lands, purporting to have been made upon a pecuniary consideration, was in fact made for love and affection, and thereby make it an advancement.   If, however, such evidence is received, the court are all of the opinion that the other side may impeach the effect of such testimony by parol. The fact contended for is sought to be established, in this case, by extrinsic evidence ; and it is clear that it may be met by evidence of the same character.

As to the deed of 1836, there is no evidence to show that it was not executed upon the consideration therein stated.   As to the deed of 1838, it seems that the intestate had paid for the other heir, large sums of money ; but had not, as we can learn, charged them as advancements ; and it appears, from the testimony, that he undertook to *equalize* them ; and, for this purpose, as well as to compensate Heman for the property which the latter had received of Heman's mother, belonging to him, this second conveyance was made.   Under the English statute of distributions, a deed *for love and affection* is but *prima facie* evidence of an advancement, and this may be rebutted by proof ; and the same doctrine is held in *Hatch* v. *Straight*, 3 Conn. Rep. 31, the statute of Connecticut, relative to advanced portions, being, in substance, a copy from the English statute of distributions.

If our statute relative to advancements is to have a similar construction, whether it appears from the face of the deed, or from extrinsic evidence, that it was made simply upon the consideration of love and affection, it is clear the lands conveyed, under the deed of 1838, ought not to be deemed an advancement.   It must, after all, turn on the *intent* of the intestate.   To hold, upon the facts now in evidence, that this deed constitutes an advancement, would I think do violence to the intention of the deceased, and would

most probably frustrate that *equality* which he designed to establish among his children. In this view of the case, the court all concur in affirming the decree of the court of probate. But, as an individual, I incline to the opinion that the evidence should not be received, to show that either of these deeds was in fact executed for love and affection. As the only consideration, mentioned in either of them, is the pecuniary one of two thousand dollars, it may well be inquired whether it is not inconsistent with well settled principles to admit parol evidence to show a different consideration in character from the one expressed in the deed ; and that too in a case where it is not offered with a view to prove fraud. I think, by a fair construction of our statute relative to advancements, we should exclude it. The statute (Slade's Ed.) p. 349, provides ; " that any deed of lands or tenements, made for love and affection, or any personal estate delivered to such heir, whereof a charge or memorandum in writing is made by such intestate, or delivered expressly as advancement, before two witnesses, who were requested by the intestate to take notice thereof, *shall be deemed and taken an advancement to such heir.*" Where the statute declares that a deed, *for love and affection, shall be deemed and taken an advancement to such heir*, it seems to me it should be held to be peremptory and conclusive. The statute *prescribes the evidence* of an advancement to the child, and, consequently, it may be well questioned whether the intention of the intestate is liable to be controlled by parol evidence. The statute declares what the effect shall be. This is the construction given in the case of *Whitman* v. *Hapgood*, 10 Mass. Rep. 437, to the act of 1783, which is the same, in effect, as ours, and is not opposed by the case of *Scott* v. *Scott*, 1 Mass. Rep. 526. In this latter case, the consideration expressed in the deed was that of love and affection and a pecuniary one of a trifling amount ; and this was held to open the inquiry, by parol, how far the valuable consideration operated between the father and son in the conveyance. I am the more confirmed in the opinion, that this is a sound construction of our statute, when we take into consideration the ensuing clause, relative to personal estate, which provides that any personal property, delivered to an heir, whereof a charge or memorandum in writing

CHITTENDEN,
*January,*
1841.

Newell
*v.*
Newell.

is made, by such intestate, or delivered expressly as advancement, before two witnesses, who are called to take notice of it, *shall be deemed and taken an advancement.* The subject of advancement is unknown to the common law, and the creation of rights, among heirs, arising from advancements and their regulation, are altogether of statutory origin. Neither the English statutes, nor those of most of the states, declare the effect of a conveyance by the father to the son for love and affection. But as ours is specific in declaring in what cases property, passing from the father to the heir, shall constitute *an advancement,* it appears to me that there is an implied negative, that if it passes into the hands of the child, under other circumstances, it shall not be taken an advancement. Indeed, it is difficult to see how the statute can be called in to lend its aid in the creation of an advancement, when its provisions have not been complied with, which, by its very terms, are made necessary to create it. There was wisdom in the legislature in prescribing what should be evidence of an advancement. We have, by this, a certain rule, on this subject, which shall govern courts of justice, as to the character of the evidence necessary to show the *intent* of the parent to make an advancement. Thus he is enabled to know with certainty, in his life time, what will be necessary when he shall have been numbered with the dead, to constitute an advancement among any of his children. If, through inadvertence, or any other cause, he has not provided the statute evidence necessary to show *his intent,* he can, while living, make all things right among his children, by will. Without giving our statute this effect, we should have no certain rule, and the object of the legislature would, I conceive, be thwarted. Suppose property is delivered to the son in presence of but one witness. Is that sufficient? I think it will not be contended, it could constitute an advancement. Why then is not the statute equally imperative in requiring a charge, or memorandum in writing to be made, where two witnesses are not called. I am not aware that our statute has received any judicial construction at variance with the views now expressed. In the case of *Robinson* v. *Robinson,* Bray. Rep. 59, the only point litigated was, as to the effect of a receipt of one of the heirs, (which was expressed to be in

full of his share of the ancestor's estate,) in barring him of all further claim as heir. It was admitted, by the learned counsel for the heir, that his receipt was such a memorandum in writing as the statute required, and that the sum specified therein should be taken as an advancement. In Pick. Rep. we have several cases giving the same effect to the act of the legislature of Massachusetts, relative to advancements, which is similar to ours. If this is a sound construction of the statute, relative to advancements in personal property, it would seem strange that the legislature should have left it open, as to what should constitute the proper evidence that a deed was executed for love and affection. I must think that when the legislature say that a deed for love and affection, shall *be deemed and taken an advancement*, it should appear upon the face of the deed to have been executed upon such consideration. If a pecuniary consideration is inserted in the deed, it furnishes evidence, to my mind, that the parent did not intend it as an advancement. To permit the deed, in cases like the present, to be contradicted and controlled by parol evidence, would be to open the door, in many cases, to much conflicting testimony, and lead to great uncertainty ; and would, in my view, be at war with the policy and spirit of the statute.

But, as different views may be entertained as to the effect which should be given to the statute, it is not necessary that it should be passed upon in this case.. The court are all agreed, that, though we hold that the testimony offered is admissible, yet, it is insufficient to constitute the lands conveyed by either of the deeds an advancement; and the decree of the court of probate is affirmed.