## THOMAS S. HATTERSLEY et ux.

*v.*

## JANE A. BISSETT et al.

1. When a parent undertakes to make disposition of his estate amongst his several children, the presumption is that he knows best what measure is due to each.

2. Where a parent, after making and publishing his will, and after the death of one of his devisees dying without issue, makes a conveyance of a portion of his real estate, which he had devised in his will to his son Thomas, to his daughter Jane, to whom he had also devised portions of his real estate, a case for an election upon the part of Jane whether she will accept under the deed or under the will, at the suit of Thomas, is not made out. .

3. Where the grantor or testator deals only with his own property, and in disposing of it gives two portions to one, he imposes no conditions upon the grantee or devisee; the latter in neither case is under obligations to elect.

4. In case a testator first disposes of all of his real and personal· estate amongst his four children, soon after which, and in the lifetime of the testator, one of them dies without issue, concerning which the testator makes·no other provision, in consequence of which as to the portion so given him dies intestate, but before his death he executes and delivers a deed, which is expressed upon its·face to be in consideration of one dollar and natural love and affection, to his daughter Jane for a portion of his real estate which he had devised to his son Thomas, it may be shown by parol testimony that the real consideration of such conveyance was care and services of the said Jane to the testator during the last years of his life, and that he so declared when he was making the arrangements for it and executed the deed of conveyance.

5. It may be shown by parol testimony whether such transactions between the parent and child are or are not intended to operate as an advancement. In such case, the deed of conveyance expressing it to be upon the consideration of one dollar and natural love and affection, the presumption is that an advancement was intended; but such presumption may be overcome by parol testimony showing the intention to be otherwise.

On final hearing on pleadings and proofs.

*Mr. John H. Backes,* for the complainant.

*Mr. Woodbridge Strong,* for the defendant.

BIRD, V. C.

Charles Hattersley died, leaving a last will and testament dated April 16th, 1884. He left three children him surviving, two sons and a daughter. He had another daughter who died May 4th, 1884, in the lifetime of the testator. She left no issue. He left real estate in the city of New Brunswick and also in the city of Trenton, and about $2,000 worth of personal property. He devised to his son Thomas portions of his land lying in New Brunswick designated as lots two, three and four, together with other lands, all of which were covered by a mortgage given by the testator for $6,000. He gave to Charles portions of his real estate in Trenton. He gave to his daughter Mrs. Cherry a certain lot during her natural life. He gave a lot to his daughter Jane Alice during her natural life, and he also gave to Jane Alice another lot without qualification. The residuum of his real and personal estate, which included a store property and dwelling-house in Trenton, he gave absolutely to his two daughters.

October 17th, 1888, the testator executed and delivered to the said Jane Alice a deed of conveyance for lots numbers two, three, four and five, expressly reserving to himself the use thereof during his life and subject to the mortgage thereon. The testator died May 6th, 1890. Thomas and Charles, the executors named in the will, proved the same and accepted letters testamentary thereon. Mrs. Cherry having died in the lifetime of the testator, and without issue, and no provision having been made for such an event, the testator died intestate as to the gift to her. Therefore, that much of the estate descended to the testator's other three children as his heirs at law and next of kin.

Thomas has filed a bill for the partition of the lands given to Mrs. Cherry, between himself, his brother and sister. In this bill he insists that the parcel conveyed to his sister Jane Alice by his father after the making of the will in the year 1888 was an advancement to her, and prays that she may be called to an account therefor accordingly.

Thomas also files a bill against his sister setting up the principal facts as above recited, and insists that his sister is not entitled to take under the will and also under the said deed, but prays

that she be put to her election. Both cases were presented at the same time.

The theory upon which these cases have been presented is, that it was the intention of the testator to make an equal distribution of his estate amongst his children. This view is based upon what is claimed was the effort of the testator in and by his will as published, and also a letter written to his son Thomas in the year 1887, more than three years after the date of the will and several months before the date of the deed to Jane Alice. It may not be amiss to consider these latter facts in attempting to discover the true and final intention of the testator, but I think no one would pretend that they are controlling, especially in cases where the testator had emphatically acted otherwise. No one had the family history so intimately and so fully as the testator; and consequently no one is so capable of judging what measure to give to each, in order to establish merited equality, as the testator himself. *Johnson* v. *Baldwin, 20 Conn. 325.* And what might be a righteous distribution at one period, might at another be confessedly the contrary. Hence it is that courts do not forget that testators have a right to dispose of their own property according to their own pleasure.

I will turn my attention to the question of election. This is to be decided by ascertaining the intention of the testator or grantor. Did he intend that his daughter should take under the will and deed, or only under one? It does not follow that because he made this disposition of his property in favor of his daughter at two separate times, and in 'making the second disposition took part of that which he had previously given to his son, that thereby the doctrine of election is to be applied. A testator may alter his will; so may he take from one of the persons named in his will that which he thereby designed for him and give it to another; and if that other be one that has had a portion given or devised previously, it does not follow that he must forego the one in order to enjoy the other.

I have been unable to find any case which requires a devisee or legatee to elect, in which the testator did not, in some way, attempt to dispose of the property of such devisee as well as to

make a bequest or devise to him of the testator's own property, or impose some condition upon the gift, express or implied. There does not seem to be the slightest element of this character in this case. The testator was dealing exclusively with his own property, and made no pretence of dealing with the property of any other person. Nor has he annexed any condition to the gift, or to the grant, except the reservation to himself for life, and the payment of the $6,000, so far as it covers the lands devised to Thomas by him, and so far as it covers the lands conveyed to Jane by her. By his will he only disposed of his own, and also by the deed four years later. This he could do by a new will or a codicil or by the method adopted.

In the case of *Long* v. *Wier et ux.*, *2 Rich. Eq. 283; S. C., 46 Am. Dec. 51*, the following extract shows the facts and the opinion of the court thereon : " The late Robert Long, by his will and testament, bequeathed to his son, this complainant, amongst other things a family slave called young Amy. He also gave to his other children, of whom the defendant Mrs. Wier, was one, divers specific legacies, all of which he directed should be appraised, with the view to ascertain the value of each, including the specific legacy to the complainant; and that the legacies of all should be equalized out of the sales of a portion of his estate. After the execution of the will he gave the slave Amy to the defendant Mrs. Wier, on her marriage ; and the bill prays that the defendant may be compelled to elect between the legacy and the slave, and for her specific delivery, in the event of their electing to take the legacy, and for an account of hire. The doctrine of election as defined in *Broome* v. *Monck, 10 Ves. 611*, is where the testator gives what does not belong to him, but does belong to some one else, and gives that person an estate of his own, whereby a condition is implied, either that he shall part with his own estate, or shall not take the bounty. It is founded on the apparent intent of the testator, that the legatee should surrender some right in exchange for the legacy, and can, therefore, never arise where the legatee had not, at the time of the execution of the will, any interest or right in the property devised. A will is said to be ambulatory until the death of the

testator, and speaks in reference to that time. This is true, as to the legal effect—it can only operate upon things as they then exist; but in arriving at the intention, regard must be had to the state of things existing at the time, and not to subsequent contingencies, unless they are expressly referred to and provided for. *1 Rop. Wills (1st Am. ed.) 393, note; Meggridge v. Thackwell, 1 Ves. 475.*

"The defendants here found their claim to young Amy, upon a parol gift from the testator to the wife. The evidence in support of it, refers to two distinct times and occasions. The witness Jane Smith, testified that Amy was born in 1826 and was one of two children brought forth at the same birth, and that the testator said that he would give her to the defendant's wife, his daughter, and the other child to another of his daughters; but there was no delivery, or other act indicating a consummation of a gift. But Elizabeth Long, one of the testator's daughters, testified that defendant and his wife lived in the house of the testator some time after their marriage; and when they were about to remove, the testator inquired of witness, if she knew what property the defendant's wife wanted as a portion, and the witness told him that she had understood that she wanted young Amy, among other things. Testator replied that he had willed her to complainant, but that he had a right to do what he pleased with his property, and he would will complainant another; and when defendant removed he carried Amy with him, and has had possession ever since. These circumstances are universally considered as conclusive evidence of a gift.

"The will is dated in 1830, and the testator died in 1842; but it does not appear at what precise time the defendant and his wife removed from the testator's house, that being the time when the gift was consummated. The evidence of Elizabeth Long shows, however, that it was subsequent to the execution of the will. It is impossible, therefore, that the testator could have intended to put the defendant's wife to elect between Amy and the legacy. In the state of things existing at the time of the execution of the will, there was nothing between which to make an election, for she had no property in Amy; nor is there anything

found in the will indicating an intention that it should operate, in this respect, prospectively.   The gift to the defendant's wife was an ademption of the legacy to complainant; and, as to that, operates as a revocation of the will."

In defining the doctrine of election, Lord Eldon, in *Broome* v. *Monck, 10 Ves. 615,* thus expresses himself: "That if I give an estate belonging to A. which I have no power .to give without his concurrence, and give any estate to A., it shall be understood to be given upon condition, that he shall permit my will to take effect as to the other."   He further says that these questions depend upon "whether the testator had expressed his intention in such a manner as to raise a case of election; for, if he had called upon the person, who was his heir at his death, to convey anything, that belonged to that heir in that character, he could call upon him to convey anything but that, which was the testator's; and therefore, if there was any expression in that will affecting property in the hands of the heir, which was the testator's, it would pass by the intention declared, not by election."

In the case of *Blake* v. *Burnbury, 1 Ves. 523,* the doctrine is . laid down and illustrated in this manner: "It is the settled doctrine of a court of equity, and agreed on all sides, that no man shall be allowed to disappoint a will, under which he takes a benefit.   To put the strongest instance at once, if a man takes upon himself to devise to B. land, to which he has no color of title, and which are in the possession, or are the inheritance, of A., to whom some part of the testator's estate, real or personal, is also devised, A. must either renounce to the extent of his own estate the estate devised, or must convey his own estate to B. It is but a modification of the same case, where a man has subjected his estate to special limitations or incumbrances, and by his will makes a new disposition of the same estate free and discharged from the incumbrances, or under different limitations; the incumbrancers, deriving their interest under the will, if they will take by it, must not disappoint it; but must permit the estate to go in the new channel, and as free from incumbrance as the testator intended.   Therefore as to the argument from the supposition, that this had been a mortgage instead of a rent charge,

Hattersley v. Bissett.

if it was so, and the estate has been disposed of by the testator free from the mortgage, the case would be the same, only in different words; for a mortgage comes under the head of incumbrance. This putting a devisee to his election, however reasonable and just it may be, was certainly a strong operation of a court of equity; and I agree, the intent of the testator to dispose of that, which is not his, ought to appear upon the will, with such expression however of the *prima facie* appearance as the law admits; and that it ought to appear by declaration a plain or necessary conclusion from the circumstances; and no man ought under pretence of this rule to be spelt or conjectured out of his property. But as on one hand we are not to do it by conjecture, so on the other we are not to refuse our assent to that moral certainty and demonstration, which in such cases as the present, the general object of both instruments, the nature of the subject, the scope and purview of the will, the observations upon the particular clauses, and the force of the expression, construed according to their natural import, may produce."

Story, in his commentaries on *Equity Jurisprudence* (*vol. 2* § *1075*), in treating of the interpretation of wills involving the doctrine of election, says:

" Election, in the sense here used, is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims, in cases where there is clear intention of the person, from whom he derives one, that he should not enjoy both. Every case of election, therefore, presupposes a plurality of a gift or rights, with an intention, express or implied, of the party, who has a right to control one or both, that one should be a substitute for the other. The party who is to take has a choice; but he cannot enjoy the benefit of both.

"Thus for example, if a testator should, by his will, give to a legatee an absolute legacy of ten thousand dollars, or an annuity of one thousand dollars per annum during his life, at his election, it would be clear that he ought not to have both; and that he ought to be compelled to make an election, whether he would take the one or the other. This would be a case of express and positive election. But suppose, instead of such a bequest, the testator should devise an estate belonging to his son, or heir at law, to a third person; and should, in the same will, bequeath to this son, or heir at law, a legacy of one hundred thousand dollars, or should make him his residuary devisee of all his estate, real and personal. It would be manifest, that the testator intended that the son or heir should not take both to the exclusion of the other devisee; and

Hattersley v. Bissett.

therefore, he ought to be put to his election, which he would take; that is, either to relinquish his own estate or the bequest under the will. This would be a case of implied or constructive election. * * * Now, the ground upon which courts of equity interfere in all cases of this sort is, that the purposes of substantial justice may be obtained by carrying into full effect the whole intentions of the testator. And in regard to the cases of implied election, it has been truly remarked, that the foundation of the doctrine is still the *intention* of the author of the instrument; an intention, which, extending to the whole disposition, is frustrated by the failure of any part. Its characteristic, in its application to these cases, is, that, by suitable arrangement, full effect is given to a donation of that which is not the property of the donor. A valid gift in terms absolute, is qualified by reference to a distinct clause, which, though inoperative as a conveyance, affords authentic evidence of intention. The intention being assumed, the conscience of the donee is affected by the condition (although it is destitute of·legal validity), not express, but implied, which is annexed to the benefit proposed to him. For the donee to accept the benefit, while he declines the burden, is to defraud the design of the donor. In short, courts of equity, in such cases, adopt the rational expressions of the will, that there is an implied condition that he, who accepts a benefit under the instrument, shall adopt the whole, conforming to all its provisions, and renouncing every right inconsistent with it."

In the case of *Thompson* v. *Thompson, 2 Strobh. 48,* it is laid down as follows: "Where the testator, after the date of the codicil, and long after the date of the will, conveyed land to one who was also a devisee under the will, the court held that the testator thereby gave him the land in addition to what was given by the will, and that the doctrine of election did not apply to the case. * * * By the conveyance to the defendant the devise to·the plaintiff was revoked, with the same effect as if the plantation had been devised to the defendant by a codicil. It was the intention of the testator that the defendant should take both under the deed and under the will, and there was no subject for election."

According to these authorities it has not been shown that Jane Alice should be put to her election. The result is, that the bill asking that Jane Alice be put to her election must be dismissed, with costs.

I will next consider whether it has been shown that an advancement was intended by the making and delivery of the said deed. An advancement has been defined to be, "That which is given by a father to his child or presumptive heir, by anticipation

Hattersley *v.* Bissett.

of what he might inherit." *1 Bouv. Law Dict. 78 ; Darne's Executor* v. *Lloyd, 82 Va. 859 ; S. C., 3 Am. St. Rep. 123 ; Yundt's Appeal, 13 Pa. St. 575 ; S. C., 53 Am. Dec. 469.*

The purpose of the principle thus enunciated is equality. Equity lays hold of every reasonable opportunity to base its decrees upon this principle. So firmly rooted is this doctrine in the minds of men, that it has prompted the legislature of many countries to embody it in their laws. Yet it is not an arbitrary or unreasonable principle. The plain intention of the parties is not to be disregarded. Where such intention can satisfactorily be ascertained, it always has the sanction of the court. The court resorts to the doings and declarations of the parties interested to discover their meaning in every such transaction. *Speer* v. *Speer, 1 McCart. 240 ; Miller's Appeal, 40 Pa. St. 57 ; Johnson* v. *Belden, 20 Conn. 322 ; Parker* v. *Newitt, 18 Vr. 274 ; 2 Lead. Cas. Eq. 818 ; Langdon* v. *Astor's Executors, 16 N. Y. 9 ; Dawson* v. *Macknet, 15 Stew. Eq. 635 ; Frey* v. *Heydt, 116 Pa. St. 601 ; O'Connell* v. *O'Connell, 23 Iowa 733 ; Potts's Appeal, 10 Atl. Rep. 887 ; Yundt's Appeal, 13 Pa. St. 575 ; Johnson* v. *Evans, 8 Gill 155 ; Phillips* v. *Gregg, 10 Watts 158.*

This intention may be ascertained by the declarations made at the time or afterwards. *Speer* v. *Speer, supra ; Hatch* v. *Straight, 3 Conn. 31.*

If I had no other facts to guide me than the acts of the parties at the time of the transaction, it would be my duty to declare this conveyance to have been intended as an advancement. From a legal standpoint the consideration expressed implies an advancement, it being only for the sum of one dollar and natural love and affection. When the court has only such proof to guide it, the presumption always is that advancement is intended. *Speer* v. *Speer, supra ; Gordon* v. *Barkelew, 2 Halst. Ch. 94 ; Bogy* v. *Roberts, 48 Ark. 17 ; Hatch* v. *Straight, supra ; Johnson* v. *Belden, supra ; Parker* v. *Newitt, supra ; 1 Chit. Eq. Dig. 57 ; 1 Pom. Eq. Jur. 981, 1039, 1041 ; 1 Jarm. Wills 147 and note.*

It seems to be equally well established that the presumption arising from the written instrument may be rebutted by extrinsic

evidence. *Speer* v. *Speer, supra; Hatch* v. *Straight, supra; John-son* v. *Belden, supra; Parker* v. *Newitt, supra; 1 Chit. Eq. Dig. 57; Newell* v. *Newell, 13 Vt. 24; Jones* v. *Mason, 5 Rand. 577; Butler* v. *Merchants Insurance Co., 14 Ala. 777.* The burden of showing this rests upon the grantee. In this case Jane Alice produced Judge Strong, who had been counsel for her father and who drew the deed. He says Mr. Hattersley had spoken to him about altering his will, and making an addition to what he had given his daughter Jane Alice; and in doing so to give her the property in East Brunswick in addition to what he had given her by his will, because of her devotion to him and for remaining with him for so many years and taking care of his domestic affairs and treating him with a good deal of kindness. He says that in March or April, 1888, he had another interview with him, in which the testator said he had been induced by a friend to make the change by making a deed instead of altering his will, and required him to draw the deed to his daughter Jane Alice for this East Bruns-wick property; he gave his deed to the witness, who kept it in his possession for some months; in September, 1888, the testa-tor had trouble with a tenant, and he sent for the witness to come and see him in reference thereto; the witness called on him, and while there the testator spoke of this deed and wanted to know why he had not brought it, as he was getting old and wanted to look over it.

On the 17th day of October, 1888, the witness took the deed to the testator, who executed it in his presence and delivered it to the defendant Jane Alice. At this time he told the witness that the deed was to be in the place of the alteration of the will, and that he intended that Jane Alice should have that property in addition to what he had given her by the will, in considera-tion of services that she had rendered in his family for so many years.

In November following the execution and delivery of the deed, he said to Michael Crogan that he had made this deed to his daughter Jane Alice, and that she had been a good girl; that he had given her that property for the care that she had taken of him in his sickness; he said she had not married, she had

stayed with him and he owed that to her. The witness says he spoke of this to him several times.

Jane Alice says: "The only reason I did not get married sooner was because I stayed with my father—I was married two days after my father's funeral." She knew of the making of the will, and knew of the contents of it; she learned it from her father. The testator told her he made this deed to her instead of making a codicil to his will, and that he intended to give her more than he had by his will, because he thought she was deserving of more than he had given her; "he said I had stayed at home and he intended to give me full and plenty for what I had done—it was after I had lost my sister." The testator spoke to her the last six years before his death about compensating her for services she had rendered since the death of her mother; the witness says: "He said as he was not in good health and I nursed him; he said that I gave up all my time to him and he felt that he owed it to me."

Mr. Woolfson, who was an intimate friend of the testator, says that the testator told him that he intended to give this East Brunswick property to Jane Alice for her good behavior, and for her seeing to him herself, so that she should have a nice home. The witness says the testator said to him:

"'I have fixed that matter so that my daughter Jane Alice should have an individual deed. I have given her a deed for the property in East Brunswick. I have fixed the boys in Trenton property;' that is what he said; and that she had remained at home for a great many years and had taken good care of him and devoted herself to him while his boys had been taking care of themselves."

These interviews with Judge Strong were both before and at the time of the execution and delivery of the deed. It is not clear whether any of the interviews with Mr. Crogan were before, but he certainly had several after the deed was delivered. The interviews with Mr. Woolfson were both before and after the delivery of the deed. I think it is proper to consider all of the interviews between Judge Strong and the testator, because they all pertained to the transaction which was consummated in giving the deed, notwithstanding two of them were several

months before that event. I think none of the cases exclude
such testimony, although it may be that some of the cases ex-
clude any declarations of the grantor or testator after the making
of the deed or will. But I think the case of *Speer* v. *Speer*,
*supra*, and many others, admit testimony respecting the declara-
tions of parents as to the consideration or motive which prompted
their action under such circumstances. If for no other reason,
all of this testimony is relevant, so far as it shows an acknowl-
edgment of services rendered upon the part of Jane Alice to her
father, and his sense of obligation to her therefor. And when
to this is added what Jane Alice says respecting her services and
the oft-repeated promises of her father to compensate her there-
for, it is easy to conclude that a jury would unhesitatingly say
the deed was founded upon a valuable consideration and was
neither a gift nor an advancement.

If any meaning whatsoever is to be attached to the testator's
language as given by the several witnesses, it is the one sug-
gested. Laying every other view aside, it is absolutely certain
that he felt under high moral obligations to his daughter and
wanted to discharge them. He had made a promise to her to
remunerate her for her special attention to him and the sacrifice
which it occasioned her, and he was anxious to keep his promise.
It was not that he thought any the less of his other children,
but that it was the only way in which he could deal justly and
equitably between the others and Jane Alice. He foresaw that
to dispose of his estate amongst his children by any mathemati-
cal division of parcels or of acres would be a grave infringement
of every moral or equitable rule. When the mind or intention
of a testator or grantor is so clearly established by competent
evidence, it would be highly inequitable for the court to in-
terfere.

And this view, I think, is fully sustained in the case strikingly
in point—*Murrel* v. *Murrel*—reported in *2 Strobh. Eq. 148;
S. C., 49 Am. Dec. 664.* In this case it appeared that the de-
fendants, who were the two older sons of the intestate, had re-
ceived lands from their father in his lifetime, which the com-
plainants contended were advancements, and that the value of

these lands as advancements was not included, but should have been included, in a settlement which was had. The consideration allowed by the father for the conveyance of these lands to the defendant, was that they were his older sons, and that, he being poor, they had worked for him like negroes, and had greatly assisted in laying the foundation of his estate, and that they were fairly entitled, as a matter of justice, to an extra share. It also appeared that during the time the services were being rendered the father held out promises of remuneration to his sons for their extraordinary exertions, to be realized in the distribution of his estate. The chancellor, under this state of facts, considered that though a parent is entitled to the services of his children while under age, he may waive his right and may make the services of his children the consideration of a contract or promise, and that he may give property *bona fide* in the performance of such obligation of justice without this being subject to a claim on the part of the other children to consider it in the light of an advancement. On appeal these views were sustained.

If I am right in the conclusions which I have reached, so much of the bill for partition as asks for a decree declaring the conveyance to Jane Alice to be an advancement should be dismissed, with costs.